Filed 2/17/15

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| SEDA GALSTIAN AGHAIAN et al., | B252326 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC498691) |
| v. | |
| SHAHEN MINASSIAN, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Kevin Brazile, Judge.  Reversed and remanded.

Horvitz & Levy, Mitchell C. Tilner and Steven S. Fleischman; Ervin Cohen & Jessup and Allan B. Cooper for Plaintiffs and Appellants Seda Galstian Aghaian, Andranik Galstian and Aida Galstian Norhadian.

John Derrick for Defendant and Respondent Shahen Minassian.

_____

Seda Galstian Aghaian, Aida Galstian Norhadian, and Andranik Galstian (Plaintiffs) challenge the trial court's order staying this action on the ground of forum non conveniens. The trial court found the matter to be more appropriately heard in Iran. The sole issue on appeal is whether Iran is a suitable alternative forum. It is not. Thus, we reverse the court's order.

## FACTS

Plaintiffs are the children and heirs of Gagik Galstian and Knarik Galstian.[1] Gagik and Knarik owned a number of properties in Iran, but were forced to abandon them in September 1978, when the family fled to Los Angeles after the overthrow of the Shah. In or about 1991, the Galstians learned they could recover their properties through a man named Jalinous, who was their friend and a lawyer in Iran. To that end, Gagik executed a series of powers of attorney naming Jalinous and others as his attorneys in fact over the properties in Iran. In February of 1996, the Iranian government issued a written ruling to allow Gagik and his family to enter and leave Iran, reclaim all of their properties, and freely engage in property transactions. The parties then began the process of reclaiming and selling Gagik's properties.

By mid-2003, defendants Shahen Minassian and Nader Izadi held the powers of attorney for the remaining properties. They executed a general quitclaim deed transferring all of Gagik's remaining properties to themselves for little or no consideration in 2008. Minassian also deeded to himself at least one, and possibly more, of Knarik's properties. Gagik discovered the transfers on or about January 7, 2010, and demanded that title be returned to him. Gagik then hired an Iranian attorney in February 2010, who pressed criminal charges against Minassian in Iran relating to certain properties. In a separate proceeding in 2012, another Iranian lawyer representing Gagik obtained a copy of the 2008 general quitclaim deed granting all of Gagik's property to Minassian and Izadi. Gagik and Knarik died in 2012.

---

[1] For ease of reference, we will refer to members of Galstian family by their first names.

Plaintiffs filed suit against Minassian and Izadi in the instant action on January 7, 2013, alleging the above facts and asserting causes of actions for breach of fiduciary duty, accounting, and conversion. Plaintiffs sought monetary damages and injunctive relief. Minassian moved to dismiss or, in the alternative, stay the action based on forum non conveniens. Minassian argued the Iranian civil court provides a suitable forum for an action brought by Iranian citizens against Iranian citizens, involving a dispute over real properties located in Iran. Further, the trial court lacks the power to enforce an order directing the transfer of real property in Iran and lacks jurisdiction over Izadi, who resides in Iran and has indicated he will not submit to the jurisdiction of a California court. The trial court stayed the action pursuant to Code of Civil Procedure section 410.30, subdivision (a), which provides that a court shall stay or dismiss an action when it finds that the interest of substantial justice is served by having the action heard in a forum outside the state. Plaintiffs timely appealed.

## DISCUSSION

### I. Applicable Law

The doctrine of forum non conveniens allows courts to "exercise their discretionary power to decline to proceed in those causes of action which they conclude, on satisfactory evidence, may be more appropriately and justly tried elsewhere." (*Price v. Atchison, T. & S. F. Ry. Co.* (1954) 42 Cal.2d 577, 584.) The doctrine of forum non conveniens is codified in Code of Civil Procedure section 410.30, which provides: "(a) When a court upon motion of a party or its own motion finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just."

In determining whether to grant a motion based on forum non conveniens, the court makes a threshold determination whether the alternate forum is a suitable place for trial, and if it is, the court then balances the private interests of the litigants and the interests of the public in retaining the action in California. (*Stangvik v. Shiley Inc.* (1991) 54 Cal.3d 744, 751-752 (*Stangvik*).) "[T]he defendant, as the moving party, bears the

3

burden of proof.  The granting or denial of such a motion is within the trial court's discretion, and substantial deference is accorded its determination in this regard."  (*Ibid*.)

An alternative forum is suitable if the defendant is subject to its jurisdiction and the cause of action is not barred by the statute of limitations.  (*Guimei v. General Electric Co.* (2009) 172 Cal.App.4th 689, 696 (*Guimei*); Judicial Council com., 14 West's Ann. Code Civ. Proc. (1973 ed.) § 410.30, pp. 492-493.)  "[S]o long as there is jurisdiction and no statute of limitations bar, a forum is suitable where an action 'can be brought,' although not necessarily won."  (*Shiley Inc. v. Superior Court* (1992) 4 Cal.App.4th 126, 132 (*Shiley*).)  The alternative forum does not become unsuitable simply because the law is less favorable or recovery is more difficult, if not impossible.  (*Guimei, supra,* at p. 696.)

In " 'rare circumstances,' " an alternative forum may be found unsuitable if it "provides no remedy at all."  (*Shiley, supra,* at p. 133; *Piper Aircraft Co. v. Reyno* (1981) 454 U.S. 235, 254-255, fn. 22.)  This exception has been applied in cases where the proposed alternative forum is in a foreign country that lacks an independent judiciary or fails to provide basic due process rights to one or more of the litigants.  (*Shiley, supra,* at pp. 133-134.)  The court in *Boaz v. Boyle & Co.* (1995) 40 Cal.App.4th 700, explained that "a forum is suitable if the defendant is amenable to process there, there is no procedural bar to the ability of courts of the foreign jurisdiction to reach the issues raised on their merits (or, if there is, the advantage of the bar – typically, the statute of limitations – is waived by defendants), and adjudication in the alternative forum is by an independent judiciary applying what American courts regard, generally, as due process of law." (*Id*. at p. 711.)

In *Rasoulzadeh v. Associated Press* (S.D.N.Y. 1983) 574 F.Supp. 854, 861 (*Rasoulzadeh*), the court held that an alternative forum in Iran was not available since Iranian courts were administered by Iranian mullahs and the plaintiffs were likely to be shot if they returned to Iran.  *Rasoulzadeh,* in particular, has been cited by California courts as an example of the "rare circumstance" in which an alternative forum provided no remedy at all.  (*See Guimei, supra,* 172 Cal.App.4th at p. 697; *Chong v. Superior*

4

*Court* (1997) 58 Cal.App.4th 1032, 1037; *Shiley, supra,* 4 Cal.App.4th at p. 134, fn. 4.) Similarly, in *Bank Melli Iran v. Pahlavi* (9th Cir. 1995) 58 F.3d 1406, 1410 (*Pahlavi*), banks sought to enforce judgments they obtained in Iran against the sister of the former Shah. The Ninth Circuit declined to recognize the Iranian court judgments because the defendant "could not expect fair treatment from the courts of Iran, could not personally appear before those courts, could not obtain proper legal representation in Iran, and could not even obtain local witnesses on her behalf." In short, the defendant could not obtain due process of law in the Iranian courts. (*Id.* at p. 1413.)

## II.     Evidence of Suitability of Alternate Forum

Here, the parties submitted their own declarations as well as expert declarations regarding the Iranian civil court system. Minassian declared that he was a citizen of Iran and spent most of his time there. As a condition of a dismissal or stay pursuant to forum non conveniens, he was willing to stipulate to the jurisdiction of the Iranian civil courts and to waive or toll any applicable statute of limitations. Reza Athari, an attorney who has been licensed to practice law in Iran since 1976 and in California since 1996, submitted a declaration in support of Minassian's motion. Athari described the Iranian civil court structure and the pertinent procedures involved, including that testimony is taken under oath and subject to civil and criminal penalties for perjury. Athari also stated civil courts in Iran, "like those in France and Belgium, are based on an 'inquisitorial system' as well as a limited form of 'adversarial system' as used in the United Kingdom and the United States."

According to Athari, "Iranian law is based on a mix of civil law, with its historical roots in French and Belgian civil laws. However, all laws must not be in direct conflict with clearly defined Islamic tenets. Almost all procedures followed in California civil suits are available and followed in Iranian civil courts," including the ability to file suit, state causes of action, answer, demurrer, challenge jurisdiction and/or venue, challenge the judge based on actual bias, issue oral and written discovery, subpoena documents, things and persons, hire and present experts, challenge experts opinions, argue before the courts and present briefs, appeal, and seek a retrial. Plaintiffs could assert their claims for

5

breach of fiduciary duty, accounting, conversion and injunctive relief in the civil court in Iran. As a result, Athari opined that "[t]he Iranian civil court is a suitable alternative forum for the adjudication of the claims asserted by Plaintiffs in the US Action." He also reviewed documents indicating Plaintiffs have previously sought to be acknowledged as the heirs to Gagik in Iranian courts and succeeded. Finally, he explained how the balancing of interests in the second prong favored litigating the matter in Iran since most of the witnesses, documents and properties were located there.

Plaintiffs' opposition included declarations from plaintiff Seda Aghaian, Mehrangiz Kar, and Patrick Clawson. Kar, a human rights lawyer from Iran, opined that forcing Plaintiffs to bring their action in Iran would be "unjust and inappropriate because the legal system in Iran does not afford the same rights and protections to Plaintiffs as the American legal system does, is biased against women such as Plaintiffs Aghaian and Norhadian, requires the application of Islamic law to non-Muslims, and is also biased against those who left Iran in or around the time of the Islamic revolution in 1979 but who are now seeking to establish their rights in and to property in Iran." Kar further believed the judiciary was not independent and stated judges often were compelled to "handle a certain case in a way that benefits one party over another, despite the facts of the case." Likewise, "[t]he same pressures, corruption and unofficial relationships that can affect the decisions of judges can also affect the behavior of attorneys." Aghaian confirmed the Galstians are not Muslims and therefore, would be subject to the laws of a religion to which they did not belong since no law in Iran can be in conflict with Islamic law.

Plaintiffs also submitted the declaration of Patrick Clawson, the director of research of the Washington Institute for Near East Policy, who has been previously designated and qualified as an expert on issues relating to Iran. Crawson opined that the Iranian legal system is heavily influenced by the executive and religious authorities and therefore, lacks independence. Crawson cited to numerous sources that showed Iranian courts discriminate on grounds of sex, religion, and political opinion. Further, Crawson

6

opined that Iranian courts are corrupt and do not guarantee the right to representation by a qualified lawyer.

Noting that "[t]his is not a clear and obvious decision," the trial court found Iran to be a suitable alternative forum based on all the evidence presented. It was persuaded by Athari's declaration. However, the trial court gave "great weight" to Clawson's declaration based on his "exceptional qualifications." The trial court found Clawson's opinion that the Iranian courts are not always guided by the law and that they discriminate based on sex and religion to be particularly compelling.

It reasoned, "[h]owever, [that] courts are not to deny motions for forum non conveniens based on evidence that the alternative court has less favorable laws; the scales are only tipped where the alternative forum provides no remedy at all. [Citation.] The Court declines to find this to be such a situation. In [*Rasoulzadeh*], the court declined to find Iran to be a suitable alternative forum but only because plaintiffs there were likely to be shot if they returned to Iran. Here, the evidence is that Plaintiffs' father had safely traveled to and from Iran a number of times before he became to[o] infirm to do so; Plaintiffs have not presented evidence that they are high-profile persons in Iran, like the plaintiffs in *Rasoulzadeh,* such that they would be subject to travel restrictions or threats to their safety if they returned." The trial court then balanced the private and public factors, finding they generally weighed in favor of granting the motion.

## III.    Standard of Review

Although the expert declarations submitted by the parties reach opposing conclusions about whether Iran is a suitable alternative forum, they do not present conflicting views of the Iranian court system. Plaintiffs' experts discuss the judiciary's lack of independence, its bias against women and non-Muslims, and its corruption. Minassian's expert does not address these issues. He instead discussed the procedures available to plaintiffs in an Iranian court, such as the ability to file a complaint, seek appellate review, obtain testimony, and present evidence. Because there is no conflict in the evidence, de novo review is appropriate here. When the facts are not disputed, the effect or legal significance of those facts is a question of law, and the appellate court is

7

free to draw its own conclusions, independent of the ruling by the trial court. (*Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799.)

## IV.    Analysis

Here, Minassian affirmed he would submit to the jurisdiction of Iranian courts and waive any statute of limitations defense.  Athari described the procedures followed in Iranian courts and asserted that remedies for Plaintiffs' grievances may be had in Iran. These facts alone are insufficient to render Iran a suitable alternative forum when Iran lacks "an independent judiciary applying what American court regard, generally, as due process of law." (*Boaz v. Boyle & Co, supra,* 40 Cal.App.4th at p. 711.)  The Due Process Clause confers on individuals a constitutional right to be free from discrimination based on gender or religion.  (*Davis v. Passman* (1979) 442 U.S. 228, 235; *Townsend v. Superior* (1975) 15 Cal.3d 774, 789.)  Minassian fails to provide evidence that Plaintiffs can expect fair treatment from the Iranian courts.

*Presbyterian Church of Sudan v. Talisman Energy* (S.D.N.Y. 2003) 244 F.Supp.2d 289, illustrates the evidentiary burden that Minassian must carry.  There, the defendant, who was accused of committing human rights violations in connection with its oil exploration activities in Sudan, moved to dismiss on the ground of forum non conveniens.  It suggested the plaintiffs bring their action in Sudan, where the alleged violations occurred.  The defendant submitted an affidavit from a law professor detailing the procedures and jurisprudence of the Sudanese judicial system.  The district court found this evidence insufficient to grant the motion to dismiss:  "Notably absent from the affidavit, however, is any statement indicating that the Sudanese judicial system is fair and free from corruption, and that plaintiffs, who are alleging that Sudan committed genocide and war crimes, could get a fair trial. Plaintiffs' expert . . . addresses this point, and notes that plaintiffs, who are non-Muslims, enjoy greatly reduced rights in Sudan under the system of Islamic law (*Shari'a*) in place.  [Citation.]  These reduced rights include a total lack of legal personality for plaintiffs who practice traditional African religions, and diminished testimonial competence for Christians.  [Citation.]  [The expert]

concludes that 'the trial of this case in Sudan will result in a total failure of justice.' " (*Id.* at pp. 335-336.)

Similarly, Minassian has presented a declaration detailing the procedures and jurisprudence of the Iranian judicial system. Notably absent is any indication that Plaintiffs could receive a fair trial. Instead, the evidence is overwhelming that Iranian courts discriminate against women and non-Muslims. Among other things, Plaintiffs submitted evidence that the testimony of a woman counts for half the value of that of a man, and that women are not treated equally before the courts, particularly in personal status matters relating to marriage, divorce, inheritance, and child custody, and only men can serve as judicial officers. Both Clawson and Kar confirm that the judiciary in Iran is heavily influenced by religious authorities and that the law requires the head of the judiciary as well as the prosecutor general and all Supreme Court judges to be high ranking clerics. Clawson cites to "many accounts of unequal treatment afforded to non-Muslims by Iranian courts" as a basis for his opinion that the Iranian legal system discriminates on the grounds of sex, religion, and political opinion. Athari's declaration admits that Iranian law must not be in direct conflict with Islamic tenets. Two of the three Plaintiffs here are women and the Galstian family members are not Muslim. Leaving aside whether Iranian courts are independent or corrupt, this is sufficient to show Iran is not a suitable alternative forum. This is the "rare circumstance" in which an alternative forum "provides no remedy at all."

Minassian contends he provided evidence that Iranian courts do not discriminate based on gender or religion because Athari asserted, " '[t]here are no religious or gender limitations' impacting access to the courts and such procedures." However just because a woman or non-Muslim may file a lawsuit or present her case at trial is not evidence the proceedings are not stacked against her.

Nor are we convinced by Minassian's attempt to place the evidentiary burden on Plaintiffs by arguing that Plaintiffs fail to show why Islamic influence on Iranian law would deprive them of a fair hearing in this real estate dispute. This argument is similar to his contention that generalized allegations of corruption and cultural or gender bias

9

cannot defeat a forum non conveniens motion. Plaintiffs do not merely present generalized allegations without any connection with the matter at hand, however. They explain how a woman or a non-Muslim is not afforded fair treatment, particularly in connection with probate matters. For example, a woman's testimony is counted as half that of a man's. Minassian's point that one of the plaintiffs is a man is irrelevant. Two of the plaintiffs are women, one of whom is integral to the case. Aghaian, one of Gagik's daughters, wrote the 1996 agreement between Gagik and Minassian and attended its signing. She also "was directly involved in analyzing the accounting records Minassian would provide Gagik in Los Angeles County, CA." and "inspected all documentation pertaining to Gagik's properties in Iran . . . ." If this case were tried in Iran, her testimony on all of these matters would count for half of Minassian's or any other man's.

In an effort to bypass a substantive analysis, Minassian contends the record is incomplete because a reporter's transcript is not in the record. As a result, this court "must indulge all intendments and presumptions to support the challenged ruling." (*Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1271.) California Rules of Court provide that an appellant may "elect[] to proceed without a reporter's transcript" and one is only required if "an appellant intends to raise any issue that requires consideration of the oral proceedings in the superior court . . . ." (Cal. Rules of Court, rules 8.120(b), 8.130(a)(4).) If we did determine that a reporter's transcript was necessary "to prevent a miscarriage of justice," we could, on our own, order the record augmented with a reporter's transcript, with the cost to be borne by the plaintiff. (Cal. Rules of Court, rules 8.130(a)(4), 8.155.)

As discussed above, there is insufficient evidence to show Iran is a suitable alternative forum. Minassian admits "the unreported hearing was not an evidentiary one at which sworn witnesses took the stand" and instead was one in which written evidence, already submitted, was considered and argued. All of the parties' declarations and exhibits are included in the Plaintiffs Appendix and there is no indication any evidence is missing from it. Accordingly, we can indulge in no presumption or intendment which would conjure up evidence where there is none.

10

**DISPOSITION**

The challenged order is reversed and the matter is remanded to the trial court for further proceedings.  Plaintiffs are awarded costs on appeal.

**CERTIFIED FOR PUBLICATION**


BIGELOW, P. J.

We concur:


RUBIN, J.


GRIMES, J.

11