Filed 3/16/18

**CERTIFIED FOR PUBLICATION**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| QUANTA COMPUTER INC., | B280042 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC629858) |
| v. | |
| JAPAN COMMUNICATIONS INC., | |
| Defendant and Respondent. | |

APPEAL from order of the Superior Court of Los Angeles County, Gregory Keosian, Judge.  Affirmed.

Loeb & Loeb, Terry D. Garnett and Donald A. Miller, for Plaintiff and Appellant.

Sheppard, Mullin, Richter & Hampton, Andre J. Cronthall and Sarah A. K. Blitz, for Defendant and Respondent.

———————————————

A Taiwanese company entered into a contract to manufacture and sell cellular telephones to a Japanese company. The parties negotiated a forum selection clause mandating that any dispute be resolved in a California court under California law. Nothing in the creation, performance, or alleged breach of the contract has any connection to California. The Taiwanese company filed an action in the Los Angeles Superior Court alleging breach of contract by the Japanese entity. The trial court ordered the case dismissed on forum non conveniens grounds. We hold the trial court did not abuse its discretion in finding that suitable alternative forums exist and that California has no public interest in burdening its courts with an action lacking any identifiable connection to the state. The order of dismissal is affirmed.

## FACTUAL AND PROCEDURAL HISTORY

### *Complaint*

Plaintiff and appellant Quanta Computer Inc., a Taiwanese corporation, filed a breach of contract lawsuit in the Los Angeles Superior Court against defendant and respondent Japanese Communications Inc. (JCI). Quanta alleged causes of action against JCI for breach of oral contract, breach of written contract, breach of the covenant of good faith and fair dealing, and quantum meruit. Quanta

2

is a "original design manufacturer" of various hi-tech devices. Quanta's principal place of business is in Tao Yuan City, Taiwan. JCI is a Japanese corporation that sells technology devices to end users. JCI's principal place of business is in Tokyo, Japan.

In March 2015, Quanta entered into a written agreement to manufacture smart phone devices for JCI. JCI ordered 70,000 devices under the contract. The agreement contains a choice of law and forum selection clause:

> "27.1  This Agreement shall in all respects be governed by and construed in accordance with the laws of the State of California, without regards to its choice of law rules.

> "27.2  Both parties agree to submit all disputes arising out of or in connection with this Agreement to the exclusive jurisdiction of the courts in the State of California."

In the agreement, Quanta warranted that each device would not be defective under "relevant Japanese laws to market the [devices] in Japan," and that it would "assist JCI to ensure that JCI can import the [devices] into Japan in accordance with all customs laws, statutes, and regulations . . . ." The agreement provides for primary and delivery locations at airports in Tokyo. Notice of any breach or termination of the contract was to be addressed to Quanta in Taiwan and JCI in Japan.

JCI accepted delivery under the contract but failed to pay for all of the devices within the terms of the agreement. JCI claimed that 14,246 devices had "quality issues."

Following negotiations, the parties orally agreed that (1) Quanta would repair any quality issues that were actually detectable by JCI or one of its end users; (2) JCI would pay Quanta $1 million by the end of June 2016 as partial payment for the devices; and (3) JCI would pay Quanta the remaining balance owed for the devices by July 31, 2016. The oral agreement was memorialized in a June 2016 memorandum of understanding (MOU). A provision in the MOU states that "[b]oth parties agree to submit all disputes arising out of or in connection with this MOU to the exclusive jurisdiction of the courts in the State of California." The complaint alleges that JCI failed to reimburse Quanta under the MOU.

### *JCI's Japanese Action*

On September 26, 2016, JCI filed a lawsuit in Japan against Quanta for breach of the agreement. In the lawsuit, JCI seeks ¥630,462,963 (approximately $6.28 million) in damages for defective devices and resulting harm for selling defective smart phones. The complaint also sought declaratory relief that it did not owe Quanta $2.17 million claimed in damages.

4

### *Motion to Dismiss or Stay for Forum Non Conveniens*

On the same day it filed a lawsuit in Japan, JCI filed a motion to dismiss or stay for forum non conveniens, contending that section 27.2 of the agreement should not be enforced because the lawsuit "lacks *any* nexus to California." JCI argued that enforcement of the clause would be unreasonable, and that the traditional forum non conveniens factors under California Code of Civil Procedure sections 410.30 and 418.10 warranted dismissal.

In an attached declaration, JCI's President and Chief Operating Officer stated that Quanta manufactured the smart phone devices in China. No discussions, meetings, or telephone calls regarding the agreement involved individuals located in California or the United States. All negotiations took place in Japan or Taiwan. Every employee of Quanta and JCI resides in Asia, except corporate counsel for JCI, who does not reside in California. No aspect of JCI's performance took place in or impacted markets in the United States or California. The devices at issue were delivered, stored, and sold in Japan to Japanese end users. Some users returned the phones after complaining of defects. Any repairs made to the devices were made by Quanta subsidiaries in China. The dispute relates to workmanship and performance by businesses manufacturing products for Japan, so the outcome of the case could influence Japanese businesses' ability to demand standards of quality and

performance.  Relevant witnesses, documents, and materials are located in Japan and China.

In opposition to JCI's motion to dismiss or stay the action, Quanta submitted a declaration of its Senior Director of Sales.  During negotiations, JCI initially proposed Japan as the choice of law and forum.  Quanta rejected Japan and instead "proposed a neutral forum to settle disputes, Singapore."  JCI, through its U.S. in-house attorney, rejected Singapore and proposed "the State of California" as the choice of law and forum.  Quanta agreed to California because it was a neutral location.

The opposition was also supported by JCI's discovery responses.  In the responses, JCI agreed that it rejected Singapore as the choice of law and jurisdiction under sections 27.1 and 27.2.  Although California was proposed in oral discussions, JCI did not "specifically recall choosing or agreeing to California in section 27."

### *Trial Court's Ruling*

At the hearing on JCI's motion to stay or dismiss the action, the parties agreed the clause "was freely and voluntarily entered into" between the two corporations.  After questioning the applicability of *The Bremen v. Zapata Off–Shore Co.* (1972) 407 U.S. 1 (*The Bremen*), a case relied

6

upon by Quanta in its opposing papers,[1] the trial court inquired whether it would have to balance the parties' reasons for litigating the case in California. Quanta's attorney argued against balancing interests, citing *Cal-State Business Products & Services, Inc. v. Ricoh* (1993) 12 Cal.App.4th 1666 (*Cal-State*), for the proposition that only unreasonableness was determinative when deciding to enforce a forum selection clause.

Following oral argument, the trial court adopted its tentative ruling granting JCI's motion and dismissed the case without prejudice. The written tentative ruling addressed the forum non conveniens and mandatory forum selection issues separately. In first discussing traditional forum non conveniens considerations, the court noted that "[t]here are no contacts to California. California courts have no expertise to determine whether Quanta failed to meet quality standards tied to the Japanese, not the California, market." In the second portion of its analysis, addressing the forum selection clauses, the court "in its discretion [found] that California has no logical nexus to the parties or

_____

[1] The trial court distinguished *The Bremen* by stating that the forum selected in that case (London) was historically suited in dealing with the admiralty issues presented in the case. Quanta's counsel disagreed with the court's interpretation, stating that there was no evidence proving the parties' desire to litigate in London because of its background in admiralty law, but that the parties choose London because it was a neutral forum.

the case, and thus refrains from exercising its jurisdiction . . . . In balancing the private interests of the litigants against the interests of the public in retaining the action in California, and as Japan is a suitable forum, this court declines to burden the already overburdened court system in Los Angeles with this litigation." Quanta filed a timely notice of appeal.

## DISCUSSION

Quanta contends the trial court abused its discretion by refusing to enforce the mandatory forum selection clause and granting JCI's motion to dismiss under the traditional forum non conveniens doctrine. We conclude that JCI's forum non conveniens arguments are without merit, because JCI agreed to (and most likely proposed) California as a forum. This conclusion does not end our inquiry, because the trial court also ruled that despite the forum selection clause, it would decline to exercise its jurisdiction over the case as a matter of discretion. We conclude the court had statutory authority to decline to exercise its jurisdiction, and it did not abuse its discretion by ordering the case dismissed without prejudice.

### *JCI's Forum Non Conveniens Motion*

JCI moved to dismiss or stay the action by filing a forum non conveniens motion under Code of Civil Procedure

section 410.30.[2]  The parties in this case agree that section 27.2 constitutes a mandatory forum selection clause.[3]  We conclude JCI failed to carry its burden of showing the forum selection clause is unreasonable and should not be enforced.

California law is "in accord with the modern trend which favors enforceability of such [mandatory] forum selection clauses.  (See *The Bremen v. Zapata Off-Shore Co., supra*, 407 U.S. 1; *Central Contracting Co. v. Maryland Casualty Co.* (3d Cir. 1966) 367 F.2d 341, 344–345; *Reeves v. Chem Industrial Company* (1972) 262 Ore. 95; Rest.2d Conflict of Laws, § 80; Annot. 56 A.L.R.2d 300.)  [¶]  No satisfying reason of public policy has been suggested why enforcement should be denied a forum selection clause appearing in a contract entered into freely and voluntarily by parties who have negotiated at arm's length.  For the

---

[2] "(a) When a court upon motion of a party or its own motion finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just.

"(b) The provisions of Section 418.10 do not apply to a motion to stay or dismiss the action by a defendant who has made a general appearance."  (Code Civ. Proc., § 410.30.)

[3] "In a contract dispute in which the parties' agreement contains a forum selection clause, a threshold issue in a forum non conveniens motion is whether the forum selection clause is mandatory or permissive."  (*Animal Film, LLC v. D.E.J. Productions, Inc.* (2011) 193 Cal.App.4th 466, 471.)

9

foregoing reasons, we conclude that forum selection clauses are valid and may be given effect, in the court's discretion and in the absence of a showing that enforcement of such a clause would be unreasonable." (*Smith, Valentino & Smith, Inc. v. Superior Court* (1976) 17 Cal.3d 491, 495–496.)

JCI is in no position to claim the forum selection clause is unenforceable under traditional forum non conveniens grounds. "The factors that apply generally to a forum non conveniens motion do not control in a case involving a mandatory forum selection clause. (See, e.g., *Great Northern Ry. Co. v. Superior Court* (1970) 12 Cal.App.3d 105 [collecting generally applicable factors]; *Cal-State*, *supra*, 12 Cal.App.4th 1666, 1683 [declining to apply '*Great Northern* factors' in light of forum selection clause].)" (*Berg v. MTC Electronics Technologies* (1998) 61 Cal.App.4th 349, 358.) Where there is a mandatory forum selection clause, "the test is simply whether application of the clause is unfair or unreasonable, and the clause is usually given effect. Claims that the previously chosen forum is unfair or inconvenient are generally rejected. (See, e.g., *Appalachian Ins. Co. v. Superior Court* (1984) 162 Cal.App.3d 427.) A court will usually honor a mandatory forum selection clause without extensive analysis of factors relating to convenience. (See *Furda v. Superior Court* (1984) 161 Cal.App.3d 418.)" (*Id.* at pp. 358–359.)

JCI's traditional forum non conveniens arguments offer nothing to warrant ignoring its own negotiated agreement to litigate in California. As the party who most likely

suggested California as a mandatory forum, JCI is hard pressed to justify granting its motion on traditional forum non conveniens grounds. JCI's contention does not warrant extended discussion. Instead, we next turn to the trial court's authority, if any, to refrain from hearing the case despite the presence of jurisdiction.

### *The Trial Court's Decision Not to Provide a California Forum*

As noted above, the trial court found no connection between the parties, their dispute, and California. Based on the lack of any "logical nexus to the parties or the case," the court elected to "refrain[] from exercising its jurisdiction." In doing so, the court balanced the private interests of the litigants against the interests of the public in "retaining the action in California, and as Japan is a suitable forum, this court declines to burden the already overburdened court system in Los Angeles with this litigation." The questions presented by the court's ruling are whether a trial court may take this action on its own motion, and if so, whether the trial court acted within its discretion. We conclude the trial court could act sua sponte, and in doing so, the court acted within the bounds of reason and did not abuse its discretion.

#### *Authority of the Trial Court to Act on Its Own Motion*

The issue of a trial court's sua sponte authority to raise forum non conveniens issues is resolved by the plain

11

language of section 430.10, subdivision (a): "When a court upon motion of a party *or its own motion* finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just." (Italics added.) (Accord, *Wong v. PartyGaming, Ltd.* (6th Cir. 2009) 589 F.3d 821, 830 ["Under our precedent, a district court does not abuse its discretion simply by sua sponte raising forum non conveniens. [Citation.] The doctrine falls within the court's inherent authority"].)

We emphasize that the trial court's ruling does not rest on a finding that the court lacked jurisdiction. It is often stated that a California court has the authority to determine its own jurisdiction. (*Barry v. State of California* (2017) 2 Cal.5th 318, 326; *Walker v. Superior Court* (1991) 53 Cal.3d 257, 267.) The trial court here recognized its jurisdiction based on the forum selection clause and Quanta's complaint. The trial court correctly analyzed the issue in terms of whether that jurisdiction should be exercised.

*Standard of Review*

There is a split of authority regarding the appropriate standard of review on whether a forum selection clause should be enforced through a motion to dismiss for forum non conveniens. In *Cal-State*, *supra*, 39 Cal.App.4th at p. 1680, the court applied a substantial evidence standard of review. More recent cases have utilized an abuse of

12

discretion standard of review.  (See *Schlessinger v. Holland America,* (2004) 120 Cal.App.4th, 552, 557; *America Online, Inc. v. Superior Court* (2001) 90 Cal.App.4th 1, 9 (*AOL*); *Bancomer, S. A. v. Superior Court* (1996) 44 Cal.App.4th 1450, 1457.)  "The *Cal–State* decision represents the minority view and has been criticized as inconsistent with Supreme Court authority:  '[G]iven existing guidance on this question from our Supreme Court, and the more consistent line of Court of Appeal decisions, which likewise apply the abuse of discretion standard, we disagree with *Cal–State*'s conclusion that the substantial evidence standard applies instead.'  [Citations.]  We join the majority of cases and apply the abuse of discretion standard of review."  (*Verdugo v. Alliantgroup, L.P.* (2015) 237 Cal.App.4th 141, 148.)

An abuse of discretion standard of review "scrutinizes lower court decisions to determine if the ruling made "'exceed[s] the bounds of reason,'" all circumstances before it being considered.  [Citation.]  If not, the ruling will be affirmed regardless of whether the appellate court might have decided the issue differently."  (*AOL, supra,* 90 Cal.App.4th at pp. 7–8.)  We presume that orders and judgments of the trial court are correct and we indulge all intendments and presumptions in favor of the correctness of the order or judgment.  (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 631.)  "We review the trial court's action, not its precise reasoning, and especially not a few of its words taken out of context."  (*National Football League v. Fireman's Fund Ins. Co.* (2013) 216 Cal.App.4th

13

902, 939; accord, *Cal-State*, *supra*, 12 Cal.App.4th at p. 1676 ["[i]t is axiomatic that we review judicial action and not judicial reasoning"].)

### *The Trial Court Did Not Abuse Its Discretion*

The trial court concluded Japan (as well as China, Taiwan, and Singapore) is a suitable forum to hear the dispute. There is nothing in the record to suggest these locations are not suitable alternatives, and the parties do not dispute there is a pending Japanese action. "An alternative forum is suitable if the defendant is subject to its jurisdiction and the cause of action is not barred by the statute of limitations. [Citations.] '[S]o long as there is jurisdiction and no statute of limitations bar, a forum is suitable where an action "can be brought," although not necessarily won.' [Citation.]" (*Aghaian v. Minassian* (2015) 234 Cal.App.4th 427, 431; accord, *Stangvik v. Shiley Inc.* (1991) 54 Cal.3d 744, 752 (*Stangvik*.) Quanta does not challenge jurisdiction in Japan or Article 522 of the Commercial Code of Japan, which provides a five-year statute of limitations on commercial transactions, and presumably both agreements.

"We proceed, then, to the second and more difficult question, whether" the trial court erred in concluding that dismissal was appropriate. (*Stangvik*, *supra*, 54 Cal.3d at p. 752.)

Where, as here, "the plaintiff resides in a foreign country, . . . the plaintiff's choice of forum is much less

14

reasonable and is not entitled to the same preference as a resident of the state where the action is filed. [Citation.] At best, therefore, . . . the fact that plaintiff[] chose to file [its] complaint in California is not a substantial factor in favor of retaining jurisdiction here." (*Stangvik*, *supra*, 54 Cal.3d at p. 755, citing *Piper Aircraft Co. v. Reyno* (1981) 454 U.S. 235, 256 (*Piper*).) Here, neither Quanta nor JCI are California corporations, nor do they have any connection to the state other than the forum selection clause, and California has no meaningful public interest whatever in retaining the action. "*Piper* held that the jurisdiction with the greater interest should bear the burden of entertaining the litigation. (*Piper, supra,* 454 U.S. at pp. 260–261.)" (*Id.* at p. 757.) California's public interest certainly is less than that of the Asian countries directly related to the dispute.

The trial court declined "to burden the already overburdened court system in Los Angeles with this litigation." Applying the deferential abuse of discretion standard of review, we see no error in the trial court's conclusion. The trial court could reasonably conclude that the logistics involved in litigating a dispute in which most or all witnesses are from Asia, many of whom may require the assistance of an interpreter, would place an unnecessary burden on the California courts. The parties do not dispute that issues relating to the quality of Quanta's product would be addressed through "relevant Japanese laws." Although California may have been freely chosen given its neutrality, this does not establish that California is a reasonable forum.

15

Nothing suggests that California courts have expertise in Japanese product defect law. Negotiations, execution of the agreements, their performance (i.e., delivery locations, end user purchases, quality issue detection, and renegotiations), all occurred in Japan or Taiwan. The disputes are therefore essentially local to Taiwan and Japan.

In light of all these considerations, the trial court did not abuse its discretion in declining to provide a forum for the action. This case comes within the jurisdiction of a California court only due to the forum selection clause. Because there is a suitable alternative forum and the parties to the dispute have no connection to California, the trial court could conclude that it is unreasonable to require California courts to accept the burden of the litigation. California has no public interest in providing a forum for resolution of a dispute between two Asian companies, involving a contract formed and executed in Asian countries, where there are suitable alternatives. The determination not to burden our courts with this purely foreign litigation was well within the court's considerable discretion.

*Section 410.40 Does Not Preclude a Court from Exercising its Discretion in Dismissing a Purely Foreign Dispute*

Although not directly raised by Quanta as an issue on appeal, we briefly address the interplay between section 410.30, which codifies forum non conveniens, and section 410.40, which permits a party to file an action against a

foreign corporation in California under defined circumstances. Section 410.40 provides that any person "may maintain an action" against a foreign corporation where the action arises out of or relates to any contract "for which a choice of California law has been made in whole or in part by the parties thereto," and where the contract relates to a transaction with a minimum aggregate value of $1,000,000, and contains a provision whereby the foreign corporation submits to the jurisdiction of California.

Section 410.40 was enacted by Assembly Bill No.3223 (1985-1986 Reg. Sess.) as introduced February 14, 1986, and was intended "to attract to our legal community international transaction[s] - particularly international arbitration." (Richard M. Mosk, Sanders, Barnet, Jacobson, Goldman & Mosk, letter to Sen. Quentin Kopp, Mar. 18, 1991.) Proponents of the bill sought to exempt certain cases from the doctrine of forum non conveniens so that California could compete as an international arbitration center. "The proponents believe this bill will have a minimal impact on California courts since international contract disputes are generally resolved through arbitration proceedings." (Sen. Com. on Judiciary, Analysis of Assem. Bill. No. 3223 (1985-1986 Reg. Sess.) as introduced Feb. 14, 1986, p. 4.) In order to limit the reach of section 410.30 to actions filed under section 410.40, the bill added a new subdivision (b) to section

410.30, which expressly prohibited any forum non conveniens analysis whenever section 410.40 applied.[4]

This creation of subdivision (b) to section 410.30 "was only temporary, however; it had a sunset provision. The last paragraph of the statute as amended in 1986 provided, 'This section shall remain in effect only until January 1, 1992, and as of that date is repealed, unless a later enacted statute, which is enacted before January 1, 1992, deletes or extends that date. If that date is not deleted or extended then, on and after January 1, 1992, pursuant to Section 9611 of the Government Code, Section 410.30 . . . shall have the same force and effect as if this temporary provision had not been enacted.' [¶] The Legislature did not later enact a statute, prior to January 1, 1992, deleting or extending the date of the temporary provision. Consequently, under both the language of the enacting statute and of Government Code section 9611 on which it is based, the temporary provision . . . is no longer in effect." (*Beckman v. Thompson* (1992) 4 Cal.App.4th 481, 487–488.)

Commentary leading up to the Legislature's refusal to extend the life of subdivision (b) of section 410.30 provides guidance on the current interplay between sections 410.30 and 410.40. Referring to former section 410.30, the

---

[4] Under the bill, section 410.30, subdivision (b) mandated that "[s]ubdivision (a) does not apply to an action arising out of, or relating to, a contract, agreement, or undertaking to which Section 410.40 applies."

18

Legislature in 1988 found that this state's "judicial system [is] being burdened by recent court decisions that enable citizens of foreign countries claiming injury from products used in foreign countries to nevertheless have their actions heard in California courts." (Sen. Bill No. 2683 (1987-1988 Reg. Sess.) as amended Apr. 28, 1988, § 2.) "[C]ourts should consider whether hearing the case is necessary in order to protect California residents from allegedly defective products. [¶] There are also legitimate and substantial interests that foreign countries have, without paternalistic intervention, in determining and promoting for their own citizens the appropriate accommodation among product availability, product safety, product price, and other factors." (*Ibid.*)

As presently written, section 410.40 recognizes the existence of jurisdiction in California for an aggrieved party to file a lawsuit against a foreign corporation for wrongs that have occurred abroad. This is not to say that the aggrieved party is *entitled* to have its lawsuit heard in this state, because section 410.30 continues to afford a trial court discretion to dismiss the case for "legitimate and substantial interests." This is particularly true in this case where there are no concerns of protecting Californians from allegedly defective products, and where Japan has significant interest in promoting product availability and safety for its own citizens. (See *Appalachian Ins. Co. v. Superior Court*, *supra*, 162 Cal.App.3d at p. 440 ["The principle that the doctrine of forum non conveniens protects the public interest as well as

19

that of the litigants is paramount in our determination that the forum selection clause in this contract does not preclude the application of the doctrine of forum non conveniens."].)

*The Decision in The Bremen Is Not Controlling*

Finally, we reject Quanta's argument that the trial court's ruling is inconsistent with the reasoning in *The Bremen, supra,* 407 U.S. 1. In our view, *The Bremen* court did not address the issue presented here. In *The Bremen,* a Houston-based corporation contracted to have its oil rig towed by a German company to the Adriatic Sea. (*Id.* at p. 2.) The contract specified that any dispute must be resolved before the London Court of Justice. (*Ibid.*) The oil rig was damaged during transport, and the Houston corporation filed suit in federal court in Florida where the damaged rig had been towed, instead of in London as mandated by the contract. (*Id.* at pp. 3–4.) The German company sought to enforce the forum selection clause but was unsuccessful in the district and circuit courts. In reversing, the Supreme Court reasoned that "[t]here are compelling reason why a freely negotiated private international agreement, unaffected by fraud, undue influence, or overweening bargaining power, such as that involved here, should be given full effect." (*Id.* at p. 12, fn. omitted.) Observing that an accident to the rig might occur in any one of several jurisdiction through which the rig might travel, the court reasoned that "selection of a London

20

forum was clearly a reasonable effort to bring vital certainty to this international transaction and to provide a neutral forum experienced and capable in the resolution of admiralty litigation." (*Id*. at p. 17.)

What *The Bremen* decision did not address is what would happen if the London-based court refused to exercise jurisdiction on the basis that the contract and accident had no connection to England, and England had no interest in providing a forum for such foreign litigation.  This eventuality is what happened in instant case—the trial court concluded, correctly, that the pending action had absolutely no connection to California and that California had no interest in provide a forum for the uniquely foreign dispute.

## DISPOSITION

The order of dismissal is affirmed.  No costs are awarded on appeal.


KRIEGLER, Acting P.J.

I concur:



KIM, J.*

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

22

Quanta Computer Inc. v. Japan Communications Inc.
B280042


BAKER, J., Dissenting


I reluctantly dissent. The experienced trial judge and a majority of this court are understandably reluctant to hold that California courts with already bulging dockets must make room to decide a dispute with no connection to this State or its residents. But I believe our Legislature, in enacting Code of Civil Procedure section 410.40, has said our courts should be generally open for business when it comes to this type of foreign dispute. (Code Civ. Proc., § 410.40 ["Any person may maintain an action or proceeding in a court of this state against a foreign corporation or nonresident person where the action or proceeding arises out of or relates to any contract, agreement, or undertaking for which a choice of California law has been made in whole or in part by the parties thereto and which (a) is a contract, agreement, or undertaking, contingent or otherwise, relating to a transaction involving in the aggregate not less than one million dollars ($1,000,000), and (b) contains a provision or provisions under which the foreign corporation or

nonresident agrees to submit to the jurisdiction of the courts of this state"].)

The majority opinion presents a quite plausible argument that trial judges nevertheless retain some measure of discretion to decline to entertain a case that meets the Code of Civil Procedure section 410.40 criteria. But I see no reason on which the trial judge here could rely to dismiss this case that would not equally apply to any garden-variety Code of Civil Procedure section 410.40 case. If the exceptions are not to swallow the Legislature's chosen rule, I believe the order of dismissal must be reversed.


BAKER, J.