Filed 11/21/23  Astone v. Global Mortgage Group CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| ANTHONY ASTONE,<br><br>　　Plaintiff and Appellant,<br><br>v.<br><br>GLOBAL MORTGAGE GROUP, LLC,<br><br>　　Defendant and Respondent. | A166858<br><br>(Contra Costa County<br>Super. Ct. No. C22-01745) |

Anthony Astone appeals from a trial court order under Code of Civil Procedure section 410.30 (section 410.30) staying his lawsuit against Global Mortgage Group, LLC, d/b/a MoXi (MoXi), based on a forum-selection clause in a loan agreement requiring claims that "result from" the agreement or a related trust agreement to be litigated in Mexico.  We agree with Astone that the clause does not apply to his claims against MoXi because they did not result from the loan or trust agreements.[1]  We therefore reverse the stay order and remand for further proceedings.

---

[1] As a result of this conclusion, we need not address Astone's numerous other arguments for reversal, including that MoXi lacks standing to enforce the forum-selection clause and that the loan agreement was subsequently rescinded.

1

## FACTUAL AND PROCEDURAL
## BACKGROUND

This case arises from a real estate transaction gone wrong, and it highlights the perils of Internet fraud. Around January 2022, Astone, a California resident, entered a purchase and sale agreement (purchase agreement) with an individual seller to buy real property in Cabo San Lucas, Mexico.[2] The purchase price was $345,900, including "an initial earnest money deposit of $35,340."

Astone's real estate agents had referred Astone to MoXi, a Delaware limited liability company, "to [use] as the lender" for the transaction. The purchase agreement provided that it was "contingent upon [Astone's] obtaining financing . . . through MoXi," and it also stated that MoXi would " 'handle the closing' " of the transaction. The purchase agreement itself is not in our record.

Soon after entering the purchase agreement, Astone wired the earnest money deposit to the seller and applied for a loan through MoXi. He was approved for a loan of $172,400, to be repaid over 25 years at an interest rate of 8.19 percent. The lender was a Mexican company that Astone alleges is "an affiliate" of MoXi. MoXi was to set up a trust in which the property would be held until the loan was paid, with the lender as the primary beneficiary and Astone as the secondary beneficiary.

As the date for Astone to appear in Mexico to sign the closing documents approached, he still had not received either an estimated closing statement, identifying the amount he needed to deposit into escrow, or wire instructions for the deposit. On April 11, 2022, he sent an email requesting

---

[2] We draw most of the underlying facts from the allegations of Astone's complaint.

these materials to two MoXi employees with whom he had been communicating. The next morning, he received an email purporting to be from one of the employees, Divina Espinoza Sauceda (Espinoza), instructing him to wire $164,004.04 to an account at PNC Bank. In fact, MoXi's email server had been hacked, and the email was fraudulent and sent from a different domain than MoXi's.

Later on April 12, Astone wired the full $164,004.04 to the PNC Bank account. He then received a message from the fraudulent email account confirming the wire transfer. Astone forwarded the confirmation email to the correct email address for the other MoXi employee with whom he had been corresponding, who responded positively and "gave no indication that the [money] had actually not been received by the proper escrow account." Later that day, Astone received a copy of the escrow agreement for the first time, but it did not include the wire instructions.

On April 18, Astone arrived in Mexico to sign the closing documents, having still not received any "communication from MoXi or escrow that [his] deposit had not been received." The next day, he executed all the necessary closing documents. The complaint alleges that "MoXi drafted all of the closing documents, including . . . the loan documents, trust establishment documents, [and] title transfer and vesting documents[,] and arranged for the trustee for the trust holding title to the [p]roperty."

One of the documents Astone signed was an agreement between him and the lender entitled "Opening of Credit Line for Loan Agreement" (loan agreement). Astone signed the loan agreement on his own behalf, and Espinoza signed it as "attorney-in-fact" for the lender. MoXi was not a party to this contract.

3

This loan agreement contains the forum-selection clause at the center of this case. The clause, which is translated from the original Spanish, states as follows (all errors in original):

> "SEVENTH.- GOVERNING LAW AND VENUE. The LOAN AGREEMENT and the TRUST AGREEMENT[3] shall be governed by and construed to in accordance to the applicable norms and regulations in the United Mexican States. The Parties hereby submit themselves to the jurisdiction of the competent courts in the Mexico City, in the United Mexican States, in connection with any dispute, claim or legal procedure which may result from such agreements, waiving to any other jurisdiction to which they may be entitled to due to their present or future domiciles or for any other reason."

On April 20, Espinoza notified Astone that the real estate transaction could not close because the escrow account had not received his deposit. Astone immediately contacted law enforcement and unsuccessfully attempted to reverse the wire transfer. MoXi told Astone that the transaction would be terminated unless he paid the $164,004.04 balance, which he was unable to do. Although Astone "attempted to work with the [s]eller to cancel the transaction and obtain his initial deposit back," MoXi "insist[ed] that it, and all of its affiliates, be provided with a full release from [him] before the transaction could be cancelled," and he was unable to recover his initial deposit either.

Astone filed this suit against MoXi and PNC Bank in August 2022.[4] He alleged causes of action against MoXi for breach of fiduciary duty, professional negligence, fraud, and constructive fraud. MoXi responded by

---

[3] The loan agreement does not define "TRUST AGREEMENT," but the term presumably refers to an agreement establishing the trust in which the property was to be held. We will refer to this agreement as the trust agreement, although no such document appears in our record.

[4] PNC Bank is not a party to this appeal.

4

filing a motion to stay or dismiss the action under section 410.30 based on the loan agreement's forum-selection clause. Astone opposed the motion on several grounds, including that the clause did not apply to his claims against MoXi.

After a hearing, the trial court granted MoXi's section 410.30 motion and stayed the action as to MoXi "pending resolution of [Astone's] claims by a Mexican court." Having determined that MoXi had standing to enforce the forum-selection clause even though it was not a party to the loan agreement, the court then concluded that the clause encompassed Astone's claims because of the clause's perceived expansive breadth:

> "[T]he phrase 'which may result from such agreements' is not so limited as to apply only to those claims that rely on interpretation of the agreements. Plaintiff's relationship with [MoXi] is a 'result from' the agreements at issue. Plaintiff was referred to [MoXi] to assist with the purchase of the [p]roperty and [MoXi] would not have any relationship with Plaintiff but-for the [l]oan [a]greement and other document[s] surrounding the sale of the [p]roperty. As noted at length above, [MoXi] had a significant relationship with Plaintiff and the transactions at issue.

> "For example, the Complaint alleges that [MoXi] owed Plaintiff a fiduciary duty . . . because it acted as 'Plaintiff's mortgage broker and real estate closing agent.' [Citation omitted.] This relationship, however, only comes into existence due to [the l]oan [a]greement relating to the purchase/sale of the [p]roperty. Without these agreements, [MoXi] would have no[] relationship at all with Plaintiff[]. Thus, the claims [which] 'result from' the attempted purchase of the [p]roperty all fall within the scope of the [loan a]greement."

5

## II.
## DISCUSSION

*A.     General Legal Standards*

Section 410.30, subdivision (a), authorizes a court to "stay or dismiss the action in whole or in part on any conditions that may be just" when it "finds that in the interest of substantial justice [the] action should be heard in a forum outside [California]." Thus, the statute "codifies the doctrine of forum non conveniens," which " 'is an equitable doctrine invoking the discretionary power of a court to decline to exercise the jurisdiction it has over a transitory cause of action when it believes that the action may be more appropriately and justly tried elsewhere.' " (*Grove v. Juul Labs, Inc.* (2022) 77 Cal.App.5th 1081, 1090 (*Grove*).)

A motion under section 410.30 "is a proper vehicle for enforcing a forum selection clause" in a contract. (*Grove, supra*, 77 Cal.App.5th at p. 1090; *Lu v. Dryclean-U.S.A. of California, Inc.* (1992) 11 Cal.App.4th 1490, 1492, fn. 1.) " 'Both California and federal law presume a contractual forum selection clause is valid and place the burden on the party seeking to overturn the forum selection clause.' " (*Grove*, at p. 1090.)

Generally, we review a trial court's ruling enforcing a forum-selection clause for an abuse of discretion. (*Grove, supra*, 77 Cal.App.5th at p. 1090; *Quanta Computer Inc. v. Japan Communications Inc.* (2018) 21 Cal.App.5th 438, 446.) Under this standard, reversal is unwarranted unless " 'the ruling made " 'exceed[s] the bounds of reason,' " all circumstances before [the court] being considered.' " (*Quanta Computer*, at p. 447.) Here, however, the only issue we need resolve is the scope of the forum-selection clause, a question of contract interpretation that we review de novo. (See *Animal Film, LLC v. D.E.J. Productions, Inc.* (2011) 193 Cal.App.4th 466, 471; *Intershop Communications AG v. Superior Court* (2002) 104 Cal.App.4th 191, 196.)

6

*B.*   *The Forum-selection Clause Does Not Apply to Astone's Causes of Action Against MoXi.*

Astone argues that the trial court erred by concluding the forum-selection clause encompasses his claims against MoXi. We agree.

Initially, we note that the loan agreement provides that it "shall be governed by and construed to in accordance to the applicable norms and regulations in the United Mexican States." The parties do not mention this choice-of-law provision, much less argue that it affects our analysis of the forum-selection clause's scope. As a result, we will assume that the result is the same whether we interpret the loan agreement under California law or Mexican law.

" 'In interpreting an unambiguous contractual provision we are bound to give effect to the plain and ordinary meaning of the language used by the parties.' [Citation.] Thus, where ' "contract language is clear and explicit and does not lead to absurd results, we ascertain intent from the written terms and go no further." ' " (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2003) 107 Cal.App.4th 516, 524.) Ultimately, our goal " 'is to determine and give effect to the mutual intention of the parties,' " which " 'is to be inferred, if possible, solely from the written provisions of the contract.' " (*Id.* at p. 525.) Here, neither party contends that the forum-selection clause is ambiguous in scope, and no extrinsic evidence has been offered on the clause's meaning. Accordingly, we focus on the language of the clause itself.

The forum-selection clause applies to "any dispute, claim or legal procedure which may result from such agreements," i.e., the loan and trust agreements. We agree with Astone that his claims against MoXi did not "result from" the loan and trust agreements within the ordinary meaning of that phrase. The money out of which Astone was defrauded was his own deposit into escrow, not the loan money, and MoXi's alleged failure to take

7

proper security precautions or discover and inform him that he sent the money to the wrong account occurred before he even entered into the loan agreement. Although we agree with MoXi that a forum-selection clause is not necessarily inapplicable simply because the allegedly tortious conduct happened before the contract at issue was signed, there still must be some relationship between the pre-contract conduct and the contract. Here, the fact that Astone needed a loan to complete the property purchase had no bearing on the events underlying his claims against MoXi.

In concluding that the forum-selection clause applied, the trial court determined that Astone's "relationship with [MoXi] is a 'result from' the agreements at issue" because MoXi "would not have any relationship with [Astone] but-for the [l]oan [a]greement and other document[s] surrounding the sale of the [p]roperty." But the forum-selection clause applies only to legal claims that "result from" the loan and trust agreements, not to those that result from other documents involved in the real estate transaction. And MoXi's relationship with Astone clearly predated the loan and trust agreements. Indeed, the relationship was established in the *purchase* agreement, which provided that Astone would obtain financing through MoXi and MoXi would handle the transaction's closing. If the forum-selection clause also referred to the purchase agreement, we might agree with the court's conclusion. But it does not. The court gave the clause too expansive of a reach by conflating the loan and trust agreements with the other documents involved in the real estate transaction.

We also disagree with MoXi that Astone's relationship with it "result[ed] from" the loan agreement because his "only connection to MoXi was through the purchase of the property, which would not have occurred without the [l]oan [a]greement." Nothing in the record establishes that MoXi

would not have participated in the real estate transaction if Astone had not needed a loan. As MoXi recognizes, it acted not just as his mortgage broker but also as his closing agent. And as discussed above, MoXi's allegedly tortious conduct occurred in connection with the latter role, not the former.

Moreover, even if Astone could not have purchased the property without obtaining a loan, we agree with him that it would lead to absurd results to conclude that any claim related to the real estate transaction therefore "result[ed] from" the loan agreement. Under such an interpretation, the forum-selection clause would cover *any* claim Astone had against *any* entity or individual with whom he would not have had a relationship but for the transaction. This stretches the contractual language too far.

In short, Astone's claims against MoXi did not "result[] from" the loan agreement or trust agreement, meaning that the forum-selection clause does not apply to those claims. As a result, the trial court was mistaken in staying those claims under section 410.30.

## III.
### DISPOSITION

The order staying the action as to MoXi is reversed, and the matter is remanded for further proceedings. Astone is entitled to his costs on appeal.

9

_____

Humes, P.J.

WE CONCUR:


_____

Margulies, J.


_____

Banke, J.