Filed 6/20/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ST. PAUL FIRE AND MARINE INSURANCE COMPANY et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> AMERISOURCEBERGEN CORPORATION et al., <br><br> Defendants and Respondents. | G059967 <br><br> (Super. Ct. No. 30-2020-01168930) <br><br> O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Randall J. Sherman, Judge. Affirmed. Requests for judicial notice granted.

Simpson Thacher & Bartlett and Chet A. Kronenberg for Plaintiffs and Appellants.

Reed Smith, Raymond Cardozo, Courtney C.T. Horrigan, Kim M. Watterson, Amber S. Finch and Katherine J. Ellena for Defendants and Respondents.

\*          \*          \*

St. Paul Fire and Marine Insurance Company (St. Paul Fire & Marine) and the appellants listed in the margin below (see fn. 1; collectively, the St. Paul Insurers or sometimes St. Paul) appeal from the trial court's order staying their declaratory judgment insurance coverage action.[1] The trial court issued the stay in recognition of the bellwether case of national importance that is ongoing in West Virginia (the West Virginia or WV coverage action), which, like this one, arises from the opioid prescription abuse and addiction crisis plaguing the country.

The WV coverage action commenced in March 2017, nearly four years before plaintiffs filed their complaint here. At the time the trial court issued its stay, proceedings had progressed significantly in West Virginia. Millions of pages of discovery have been produced; there have been voluminous motion practice, hearings, and rulings, including denial of summary judgment motions; there has also been an appeal to West Virginia's high court and a recent remand from that court. In Orange County, in contrast, all answers to the complaint remained pending at the time the trial court issued the stay; in fact, the trial court was still considering motions to quash service of summons for lack of personal jurisdiction over many defendants.

The trial court found that in this action and in the WV coverage action "some of the same insurance policies are at issue in both cases, and the West Virginia court will be interpreting at least one of St. Paul's policies to determine whether they cover opioid litigation, an answer that presumably will be the same whether the

_____

[1]     The St. Paul Insurers are, as noted, St. Paul Fire & Marine, plus: St. Paul Mercury Insurance Company (St. Paul Mercury), Travelers Casualty and Surety Company, Travelers Property Casualty Company of America, and The Travelers Indemnity Company. All five companies are affiliated in the sense that each is a wholly-owned subsidiary of a larger entity, The Travelers Companies, Inc. They are also affiliated in this litigation, as a practical matter, in that they jointly filed their complaint below and jointly appeared below and on appeal represented by the same counsel, uniformly advancing the same claims and arguments together.

underlying litigation is in West Virginia or some other state." The trial court concluded, "It is therefore in the interests of comity and the conservation of judicial resources to avoid potential conflicting rulings and allow the earlier-filed case to proceed first, eliminating the risk of multiple and inconsistent judgments in different cases." The court then stayed further proceedings on the St. Paul Insurers' complaint in Orange County "pending resolution of the West Virginia action."

Meanwhile, back in West Virginia, the trial court hearing the coverage action entered a much blunter assessment of St. Paul Fire & Marine's California filing: "St. Paul has filed the California Coverage Action for improper purposes, namely, delay and forum shopping . . . ."

The trial court here was aware of that finding, plus other evidence in the already substantial record, including the West Virginia court's additional finding that "[w]hatever differences exist between this action and St. Paul's California Coverage Action, at a minimum, St. Paul is asking the California court to issue declarations governing the parties already before this Court, interpreting the exact same insurance policy language already before this Court, regarding the same type of cases already before this Court, and regarding the same cases on which this Court permitted the Insurer Defendants to take discovery, raising the identical coverage issues already pending before this Court, including coverage issues on which this Court has already issued rulings."

St. Paul challenges the trial court's stay order, arguing it constitutes an abuse of discretion. But a trial court's broad discretion to dismiss an action "in the interest of substantial justice" because it "should be heard in a forum outside this state" becomes broader still when the court enters a stay rather than a dismissal order. (Code Civ. Proc.,[2] § 410.30, subd. (a); see, e.g., *Morris v. AGFA Corp.* (2006) 144 Cal.App.4th

---

[2] All further undesignated statutory references are to the Code of Civil Procedure.

1452, 1463.) "[A] stay gives effect to the general rule that a court ordinarily has inherent power, in its discretion, to stay proceedings when such a stay will accommodate the ends of justice." (*People v. Bell* (1984) 159 Cal.App.3d 323, 329.) St. Paul fails to meet its burden to demonstrate an abuse of discretion in the trial court's stay order. We therefore affirm the order.

## FACTUAL AND PROCEDURAL BACKGROUND

As the trial court explained below, the WV coverage action "involves whether St. Paul Fire & Marine and other insurers were obligated to defend and indemnify the ABC Entities against prescription opioid lawsuits in West Virginia that settled in January 2017 for $16 million."[3]

One of the ABC Entities, ABDC initiated the WV coverage action in March 2017 by filing suit in West Virginia state court against at least some of its insurance carriers, including St. Paul Fire & Marine. ABDC sought breach of contract damages and declaratory relief regarding the scope of coverage afforded by policies issued by the insurers, including primary coverage and excess general liability policies. (*AmerisourceBergen Drug Corporation v. ACE American Insurance Co. et al.* (Cir. Ct. Boone County W.Va., 2017, No. CC-03-2017-C-36).)

The coverage dispute arose out of earlier litigation that had marked the beginning of the legal fallout from the opioid prescription abuse and addiction crisis. In

---

[3] The ABC Entities include AmerisourceBergen Corporation (ABC), Bellco Drug Corporation (Bellco or BDC), MWI Veterinary Supply, Inc., PharMEDium Services, LLC, ASD Specialty Healthcare, LLC (ASD Specialty), and AmerisourceBergen Drug Corporation (ABDC). These same entities are the pharmaceutical or distributor defendants in the St. Paul Insurers' declaratory judgment action here, and they were the moving parties that obtained the stay below and are the respondents on appeal. In their moving papers below, the ABC Entities identified ABC as their parent company and the rest of the ABC Entities as "present and former ABC subsidiaries named as Defendants" in this California action.

the first of thousands of similar lawsuits filed around the country, the West Virginia Attorney General in 2012 sued ABDC in West Virginia state court alleging that ABDC negligently, recklessly, or intentionally distributed prescription opioids to West Virginia pharmacies, hospitals, and doctors in a manner that contributed to the opioid addiction crisis. The lawsuit sought damages for costs for medical care and drug treatment for West Virginians who became addicted to opioids. Once the West Virginia Attorney General's lawsuit (the WV AG action) settled in January 2017, ABDC demanded that St. Paul Fire & Marine and other insurers contribute to the settlement, but they rejected the demand.

As of January 2021, more than 3,200 similar lawsuits had been filed by local and state governments, Native American tribes, various companies and individuals, and other entities against ABDC, its subsidiaries, and many other pharmaceutical companies. Approximately 2,800 of these cases have been consolidated in federal multidistrict litigation. (*In re Nat. Prescription Opiate Litigation* (2017) 290 F.Supp.3d 1375 (the National Opioid MDL or MDL).) The multidistrict panel explained that the consolidated cases "involve common factual questions about, *inter alia*, the manufacturing and distributor defendants' knowledge of and conduct regarding the alleged diversion of these prescription opiates." (*Id.* at p. 1378.)[4]

As far as we are aware, neither the MDL nor any other prescription opioid liability cases pending around the country include corresponding litigation regarding insurance coverage issues. The WV coverage action appears to be the first of its kind, or among the first, filed anywhere in the country, and the trial judge handling the matter is

---

[4] For instance, two of the California state court actions that the St. Paul Insurers identify as related litigation in their complaint have been transferred to the National Opioid MDL, although it is by no means clear whether all have. According to St. Paul, at least one of the California cases in the MDL has been transferred back to a California federal district court.

among the most experienced jurists in the underlying subject matter, having heard and resolved the WV AG action over the course of almost five years.

In July 2018, ABDC filed an amended complaint in the WV coverage action. The amended complaint identified additional pending West Virginia opioid crisis liability lawsuits for which ABDC and a subsidiary sought coverage declarations. The amended complaint specified that the plaintiffs sought damages and a declaration of insurance coverage for losses asserted in the West Virginia liability lawsuits consolidated in the National Opioid MDL, including the two West Virginia actions selected by the MDL panel as bellwether trials. The amended complaint further stated the plaintiffs' intent to identify additional cases involving potential liability which they asserted triggered policy coverage. By October 2020, the plaintiffs in the WV coverage action identified more than 165 lawsuits in West Virginia state and federal courts (including West Virginia cases in the MDL) involving liability they claimed would trigger policy coverage.

Since its inception in March 2017, the parties have engaged in discovery of epic proportions in the WV coverage action. ABDC has responded to nearly 100 document demands, producing over 10 million pages of discovery, including deposition transcripts and exhibits that the ABC Entities produced in the National Opioid MDL, while also answering related interrogatories. For their part, the insurer defendants in the WV coverage action have produced nearly 80,000 pages of policy-related documents. The discovery process in the WV coverage action required appointment of a discovery commissioner, which delayed proceedings for more than a year as multiple motions for protective orders and motions to compel production were litigated. The process entailed a series of reports by the discovery commissioner and corresponding court hearings and rulings. Numerous depositions were also conducted through 2020.

Attempting to bring the WV coverage action to a close, the insurers there, including St. Paul Fire & Marine (but not St. Paul Mercury or the three other Travelers

6

subsidiary-plaintiffs here), filed motions for summary judgment. They asserted that the definition of "bodily injury" and related policy language under which the ABC Entities claimed coverage could not, as a matter of law, be construed to extend coverage to the damages alleged in the prescription opioid liability lawsuits. The West Virginia court was not persuaded.

On November 23, 2020, the court denied the insurers' summary judgment motions finding, at least at that stage in the proceedings, that "insurance coverage is available under the general liability insurance coverage section of the St. Paul Policy for lawsuits by government entities seeking damages for injuries suffered by their citizens."[5]

Earlier, on November 5, 2020, after the ABC Entities submitted their notices of supplemental authority in the WV coverage action, but before the court there made its summary judgment ruling, the St. Paul Insurers filed the California declaratory relief action which is the subject of this appeal.

According to the ABC Entities, the St. Paul Insurers' complaint in this action "includes every single party (both insureds and insurers) involved in—and every single policy at issue in—the WV Coverage Action."

We note the fact that parties in the WV coverage action also may be parties here does not mean that all the parties here are also parties in the West Virginia coverage action. Nor does it mean, assuming for the sake of argument that the policy language is the same or similar, that the particular policies for which coverage may be at issue are identical in both actions. For example, the St. Paul Insurers represent in their appellate briefing—and the ABC Entities do not dispute—that four of the St. Paul Insurers here

---

[5]     According to the ABC Entities, notices of supplemental authority submitted in the WV coverage action before the court made its summary judgment ruling indicated that courts in other pending proceedings had already determined that substantially similar general liability insurance policies afforded coverage in the same circumstances.

(i.e., St. Paul Mercury and the three other Travelers subsidiary-plaintiffs) are not named parties in the WV coverage action; only St. Paul Fire & Marine is.

For their part, the St. Paul Insurers expanded the parties in this action beyond those named in the WV coverage action not only by the addition of the four insurer plaintiffs joining St. Paul Fire & Marine, but also by adding a multitude of other insurer defendants that issued policies to ABC Entities between 1995 and 2018. St. Paul seeks a declaration of coverage under those policies that would require those insurers' equitable contribution—if St. Paul were to be liable for coverage of, or pay into a settlement fund or funds for, prescription opioid damages liability claims. Some of those additional defendants have filed cross-complaints in this action against the ABC Entity defendants for declaratory relief regarding the scope of their policy obligations. These added insurer defendants, however, do not appeal the trial court's stay because, by its terms, it does not apply to their cross-complaints, as we note below.

According to the ABC Entities, St. Paul never served 42 of these new insurer defendants and later dismissed 21 of them. While acknowledging that some are not named as defendants in the WV coverage action, the ABC Entities asserted that "more than 20 [are] excess insurers [that] are corporate affiliates of the defendants in the WV coverage action." The ABC Entities argue, in any event, that the relevant language of the additional policies "is identical to the language at issue in the WV Coverage Action," because those that provide excess coverage "are all 'follow-form' policies that adopt the key provisions of the primary layer policies."

Among other disagreements below, St. Paul and the ABC Entities disputed California's interest in the litigation based on the parties' respective places of incorporation or formation and principal place of business. According to respondents, for instance, of the ABC Entities, only ASD Specialty is incorporated in California, but like the rest of the ABC Entities, its principal place of business is out of state. St. Paul's complaint refers to the ABC Entities as "Bergen Brunswig Affiliates," but it is

8

undisputed that Bergen Brunswig, a former pharmaceutical corporation based in Orange County, no longer exists since it merged with Pennsylvania-based Amerisource Health in 2001 to form ABC. ABDC and ABC, which are the principal defendants in the WV AG action and much of the related liability litigation around the country, are Pennsylvania companies. As such, according to the ABC Entities, "the vast majority of policies identified by St. Paul in this action were issued in Pennsylvania to Pennsylvania corporations."

In contrast, the St. Paul Insurers assert that more than a dozen of the underlying policies on which they seek a coverage determination in this litigation were issued to the Bergen Brunswig Corporation, based in Orange County. Thus, they suggest those policies remain the source of some of the St. Paul Insurers' potential coverage liability, depending on factors that include how far back any opioid litigation claims, judgments, or settlements against the ABC Entities reach. The St. Paul Insurers point to "notice" letters that ABDC sent them in 2019 identifying more than 80 lawsuits then pending in California state and federal courts that could trigger coverage under the Bergen Brunswig policies for damages accruing while those policies were in force. In one of the letters, referencing policies issued to Bergen Brunswig, "[ABDC] stated that it "'seek[s] defense and indemnification . . . for all lawsuits identified'" in an appended "'Schedule of Noticed Prescription Opioid Claims.'"" The appendix listed 82 lawsuits filed in California naming one or more of the ABC Entities as defendants, including as St. Paul now points out, "one brought in the court below by the City of Huntington Beach . . . ."[6]

---

[6] St. Paul acknowledges in its briefing that the Huntington Beach case had been dismissed in 2018 and that another superior court action filed by several Orange County cities was "removed"—presumably to the federal MDL action. St. Paul suggests, without explanation, that many of the removed cases "have been centralized for pre-trial handling (only)" in the MDL. St. Paul does not specify what it means by its opaque "only" parenthetical.

The St. Paul Insurers' complaint in this action also stated in a footnote that they did not "intend[]" any ruling regarding coverage in this action to apply to any insurance coverage claims pending in West Virginia proceedings, nor apparently vice versa.[7]

While narrowing the scope of the complaint in this manner—at least according to footnote 11's stated intent—St. Paul at the same time expanded the litigation massively in two respects. First, as noted, it added dozens of defendants for potential contribution purposes.

Second, St. Paul does not seek declaratory judgment as to its defense and indemnity obligations to the ABC Entities solely under policies issued to Bergen Brunswig before its merger, nor is its action limited to obtaining declaratory relief on the scope of the St. Paul Insurers' liability, if any, to the ABC Entities in underlying opioid liability litigation initiated against the ABC Entities in California.

Instead, the St. Paul Insurers seek declaratory judgment of their coverage responsibilities, if any, to the ABC Entities for defense or indemnification in *every* opioid liability case filed around the country—save those filed in West Virginia, per its footnote. This includes declaratory relief regarding coverage responsibility, if any, for two "Announced Settlements." One of these settlements, apparently reached in late 2019, resolved two lawsuits brought by Ohio counties for more than $66 million. The other, announced around the same time by the North Carolina Attorney General, settled, according to the St. Paul Insurers' complaint, "cases brought by a host of cities, states, counties, and municipalities [against] Bergen Brunswig Affiliates . . . ." That settlement,

_____

[7]   Specifically, in footnote 11 of their complaint, the St. Paul Insurers state that "[i]n 2017, ABC settled an opioid-related lawsuit brought against it by the Attorney General of West Virginia," and they acknowledge that adjudication of "[c]overage for that settlement and [other] cases" is pending in the WV coverage action. They then state that "[c]overage for that settlement and [other] cases . . . is not intended to be the subject of this action," i.e., the St. Paul Insurers' declaratory judgment complaint here.

St. Paul says, is valued at a minimum of $5 billion dollars, with a ceiling of $21 billion dollars, and includes other pharmaceutical companies in addition to the ABC Entities.

Thus, in addition to the question of coverage for cases initiated in California, the St. Paul Insurers' complaint here seeks declaratory judgment regarding the scope of their defense and indemnity obligations, if any, to the ABC Entities arising from (1) the thousands of cases in the federal MDL (including all state and federal cases therein except those from West Virginia), (2) the two "Announced Settlements," and (3) all "Remaining Suits" around the country (except those pending in West Virginia).

As noted, after St. Paul filed its complaint here on November 5, 2020, the court in the West Virginia coverage action issued its ruling which found the filing duplicative. In addition to finding that St. Paul initiated "the California Coverage Action for improper purposes, namely, delay and forum shopping," the court "further f[ound] that permitting St. Paul to pursue a collateral action would cause irreparable harm to ABDC and would undermine the important governmental and judicial interests of West Virginia and this Court." The WV court concluded that "an anti-suit injunction is warranted in these unique, limited circumstances."

The ABC Entities did not seek to enforce the antisuit injunction in the trial court here. Rather than relying on that injunction, several of the ABC Entities specially appeared to request that the trial court dismiss the action for lack of personal jurisdiction (§ 418.10). Alternatively, the ABC Entities also invoked the court's authority to dismiss or stay the action on forum non conveniens grounds under section 410.30.

The trial court found merit in the latter option, stayed further proceedings "as to plaintiffs' Complaint pending resolution of the West Virginia action," and, in light of the stay, ordered the motion to quash service of summons for lack of personal jurisdiction off calendar. The trial court expressly limited its stay to further proceedings

11

"as to plaintiffs' Complaint"—which we presume excluded from the stay other continuing litigation, such as on the pending cross-complaints against the ABC Entities.[8]

The St. Paul Insurers appeal the stay.[9] (See § 904.1, subd. (a)(3) [entry of stay or dismissal under § 410.30 is an appealable order].

## DISCUSSION

St. Paul argues the stay order was an abuse of the trial court's discretion. Before turning to St. Paul's specific challenges, we begin with the applicable statute, governing principles, and the standard of review.

Section 410.30, subdivision (a), provides, "When a court upon motion of a party or its own motion finds that in the interest of substantial justice an action should be heard in a forum outside this state, the court shall stay or dismiss the action in whole or in part on any conditions that may be just."

The statute codifies the common law doctrine of forum non conveniens. (*National Football League v. Fireman's Fund Ins. Co.* (2013) 216 Cal.App.4th 902, 923

---

[8] In choosing limiting language for the scope of the stay, the trial court appears to have credited two distinctions made by some of the defendants filing cross-complaints. The first was that the ABC Entities in their motion for a stay did not identify any of the cross-complaints as subject to the stay request. Secondly, some of the cross-complainants represented that policies they may have issued to ABC Entities were not merely "follow form" or excess policies with respect to any underlying St. Paul Insurer policy or policies. We express no opinion on these subjects or matters specific to the cross-complaints; only the St. Paul Insurers' appeal of the stay of their complaint is before us.

[9] The validity of the West Virginia trial court's antisuit injunction is not before us, but rather the stay our trial court issued under its inherent authority, as implemented in the forum non conveniens doctrine, as we discuss below. While sister state court antisuit injunctions have long been recognized by California courts under the full faith and credit clause, albeit in exceptional circumstances (see *Spreckels v. Hawaiian Com. etc. Co.* (1897) 117 Cal.377, 378; *e.g., Smith v. Superior Court* (1996) 41 Cal.App.4th 1014, 1024), the ABC Entities do not rely on the injunction, which apparently remains in litigation in West Virginia, and we express no opinion on the issue.

(*NFL*).) "[E]quitable" at its core, the doctrine recognizes a trial court's authority to determine an "action may be more appropriately and justly tried elsewhere." (*Stangvik v. Shiley Inc.* (1991) 54 Cal.3d 744, 751 (*Stangvik*).) The trial court is vested with broad discretion to apply the doctrine (*ibid.*), and this discretion "widens when it imposes a stay rather than a dismissal." (*NFL*, at p. 918, fn. 7.) "[I]n considering a stay the trial court can take into account any consideration which bears on the relative suitability or convenience of the two forums." (*Century Indemnity Co. v. Bank of America* (1997) 58 Cal.App.4th 408, 412 (*Century Indemnity*).)

A stay under the forum non conveniens doctrine effectuates the trial court's "'inherent power, in its discretion, to stay proceedings when such a stay will accommodate the ends of justice.' [Citation.] As the court in *Landis v. North American Co.* (1936) 299 U.S. 248, 254, explained, 'the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" (*OTO, L.L.C. v. Kho* (2019) 8 Cal.5th 111, 141; accord, *Freiberg v. City of Mission Viejo* (1995) 33 Cal.App.4th 1484, 1489 ["Trial courts generally have the inherent power to stay proceedings in the interests of justice and to promote judicial efficiency"].)

When similar issues are pending in matters in two jurisdictions and the trial court has entered a stay, "completion of the [other] suit removes the bar to proceeding in California, and suit may proceed here under the original complaint subject to a res judicata plea by defendants on the basis of any judgment in" the other jurisdiction. (*Thomson v. Continental Ins. Co.* (1967) 66 Cal.2d 738, 746, fn. 4 (*Thomson*).) A stay in such circumstances is "similar to a continuance." (*Ibid.*)

"Granting a stay in a case where the issues in two actions are substantially identical [citations] is a matter addressed to the sound discretion of the trial court. 'In exercising its discretion the court should consider the importance of discouraging multiple litigation designed solely to harass an adverse party, and of avoiding unseemly

13

conflicts with the courts of other jurisdictions.  It should also consider whether the rights of the parties can best be determined by the court of the other jurisdiction because of the nature of the subject matter, the availability of witnesses, or the stage to which the proceedings in the other court have already advanced.'"  (*Thomson*, *supra*, 66 Cal.2d at pp. 746-747.)

Against this backdrop, we consider St. Paul's arguments that the trial court abused its discretion in issuing the stay.

St. Paul argues that the trial court improperly relied on *Lawyers Title Ins. Corp. v. Superior Court* (1984) 151 Cal.App.3d 455 (*Lawyers Title*) for what St. Paul characterizes as a rigid rationale giving precedence to the West Virginia litigation because it was filed first.  We disagree.

St. Paul distinguishes *Lawyers Title* because it involved cases pending in different California counties, not different states, and St. Paul quotes high court precedent for the proposition that "[t]he first-filed rule 'was never meant to apply where the two courts involved are not courts of the same sovereignty.'"  (*Advanced Bionics Corp. v. Medtronic, Inc.* (2002) 29 Cal.4th 697, 707.)  As such, St. Paul argues "the first filed rule does not apply where, as here, one case is pending outside of California and the other case is pending in California."  (Italics and bolding omitted.)

The trial court, however, did not invoke a first-filed rule; it only observed— correctly—that the WV coverage action was "earlier-filed."  That does not indicate, as the appellate court in the *NFL* case explained, the trial court concluded the respective filing dates were the "'dispositive' factor."  (*NFL*, *supra*, 216 Cal.App.4th at p. 934.)  Instead, the existence of pending litigation in another jurisdiction bears on the suitability question:  it is "a strong indicator that such an alternative forum exists."  (*Ibid.*)

St. Paul next contends West Virginia is an unsuitable alternative forum because "California law provides unique defenses to coverage, such as California Insurance Code § 533, which states that '[a]n insurer is not liable for a loss caused by the

14

wilful act of the insured.'" (Ins. Code, § 533.) The ABC Entities respond that this code provision "is not unique to California. In fact, California's statutory provision is a codification of language that is already in the St. Paul policy—the St. Paul policy at issue in the WV Coverage Action and this case specifically includes an '[e]xpected or intended bodily injury or property damage' exclusion. [Record citation.] St. Paul in fact asserts 'willful' acts as an affirmative defense in West Virginia [record citation], and St. Paul does not contend that California law applies to the WV Coverage Action."

St. Paul Fire & Marine's decision to switch from the defendant's side of the caption in West Virginia to the plaintiff's side here to take advantage of some possible benefit provided by California law does not render West Virginia an unsuitable forum. An alternate forum "does not become unsuitable simply because the law is less favorable or recovery is more difficult, if not impossible." (*Aghaian v. Minassian* (2015) 234 Cal.App.4th 427, 431.) Even assuming arguendo "the law is less favorable to the plaintiffs in the alternative forum," that "is irrelevant to the determination whether the forum is suitable unless 'the alternative forum provides no remedy at all.'" (*Guimei v. General Electric Co.* (2009) 172 Cal.App.4th 689, 696.) "The 'no remedy at all' exception applies 'only in "rare circumstances," such as where the alternative forum is a foreign country whose courts are ruled by a dictatorship, so that there is no independent judiciary or due process of law.'" (*Id.* at p. 697.)

This exception is inapplicable to a sister state court. The West Virginia trial court has significant experience with the exact issues posed by the St. Paul Insurers' new complaint here, earned over nearly a decade of involvement with this complex case. This includes a deep familiarity with the conduct and circumstances now alleged to trigger coverage. It also includes a four-year head start in assessing what boils down to,

15

in the West Virginia court's view, "the exact same insurance policy language
. . . regarding the same type of cases . . . raising the identical coverage issues."[10]

Not to be overlooked in considering the propriety of a stay is what likely awaits the trial court here in terms of the discovery process. Discovery in West Virginia has generated more than 10 million pages of documents; it has also consumed years of attorney and staff manpower, plus countless hours of the court's time and a discovery referee's time. If anything, given the dozens of new defendants introduced by the St. Paul Insurers and the national scope of their demand for declaratory judgment regarding coverage questions in all "Remaining Suits" outside of West Virginia, the discovery process here may be even more massive.

Employing a bellwether case in a complex matter like this can serve to winnow and sharpen not only discovery, but claims, defenses, calendaring decisions, motion practice, arguments, hearings or trial, adjudication, indeed every aspect of the litigation process—to the benefit of the parties, the court, and the public alike.[11] (*Stangvik*, *supra*, 54 Cal.3d at p. 751 [public and private interests bear on trial court's

---

[10] While the St. Paul Insurers on appeal now challenge this judicial assessment as hearsay, the sworn testimony of the ABC Entities' counsel below that the language of the policies at issue in the two actions is largely identical is *not* hearsay. Instead, it is a percipient comparison of black-and-white words on paper that the St. Paul Insurers could have chosen, if warranted, to dispute with contrary declarations—but they did not. Accordingly, we find no merit in their appellate claim that the trial court should have granted their objection to opposing counsel's declaration. Moreover, among the countless ways this case is unique, the learned West Virginia jurist opined on the identity of language and coverage issues before him *and in this very case*, which we think would qualify under the hearsay exception for relevant expert opinion evidence. In any event, we can see no reason why such an assessment should be beyond the trial court's consideration in deciding in its discretion whether to stay an action pending similar or identical proceedings in another forum.

[11] "The primary purpose of a 'bellwether' trial is to educate the parties and the court about the strengths and weaknesses of the many underlying cases. [Citation.]" (*Pacific Fertility Cases* (2022) 78 Cal.App.5th 568, 574, fn. 3.)

forum decision].)  In that respect, the trial court correctly judged the West Virginia proceedings a suitable—indeed invaluable—alternate forum which supported the issuance of a stay.  (See *Century Indemnity*, *supra*, 58 Cal.App.4th at p. 412 [trial court's broad stay discretion includes "any consideration" bearing "on the relative suitability or convenience of the two forums"].)

The St. Paul Insurers nonetheless challenge the stay largely based on their assertion the "Parties," "Policies," and "Underlying Claims" in this action meaningfully "[d]iffer" from those in the WV coverage action.  As a result, they contend that resolution of coverage questions or disputes elsewhere "will not apply more broadly to the insurance coverage issues" here.  (Capitalization adjusted.)  In other words, the insurers dispute the value of waiting for the outcome of proceedings in West Virginia.  In particular, the St. Paul Insurers premise their distinction regarding differing policies and claims on the fact that footnote 11 of their complaint technically omits from their request for declaratory judgment any question of coverage for claims arising from opioid liability litigation in the WV coverage action.

But the trial court reasonably could find minimal import in the policy and claims distinctions that St. Paul makes, given that the policy language and the nature of the coverage claims were similar, if not identical, in the two actions.  The claims or potential coverage claims were identical in terms of the insureds, i.e., ABC Entities whether in West Virginia or elsewhere; and in the nature of their policy claims or potential claims for insurance defense or indemnity arising from the opioid prescription abuse and addiction crisis.  These claims and potential claims—again whether in West Virginia or elsewhere—will require careful consideration of the circumstances said to trigger or preclude coverage, including the insureds' and third party conduct, acts, or omissions.  These underlying questions concerning causation, liability, or responsibility are sufficiently similar to generate MDL proceedings.  The coverage actions here and in West Virginia arise from the same underlying circumstances as the MDL.  The baseline

17

similarity in the nature and context of the coverage claims in the two actions is evident in the pleadings and papers submitted in each; it is also buttressed by the West Virginia court's assessment of the issue.

In sum, the St. Paul Insurers below and on appeal have failed to rebut the ABC Entities' showing of sufficient similarity to warrant a stay in the trial court's discretion. Similarly, the St. Paul Insurers have failed to rebut the ABC Entities' showing that the relevant policy language was essentially the same. Thus, the trial court reasonably could conclude the existence of the WV coverage action—which is similarly massive in size, scope, and complexity, and involves essentially the same insureds and same coverage claims in the same context, with the same or similar policy language— warranted a stay. The WV coverage action will serve as a bellwether proceeding, similar to the MDL.

There is no requirement that the parties be identical in both cases for a stay to be granted. (*Caiafa Prof. Law. Corp. v. State Farm Fire & Cas. Co.* (1993) 15 Cal.App.4th 800, 807 fn. 5.) To the extent that differences in the parties limit the res judicata effect of the WV coverage proceedings for parties here who are absent there, a stay functions as a continuance. (See *Thomson*, *supra*, 66 Cal.2d at p. 746, fn. 4.) The bellwether effect remains the same under such circumstances; the West Virginia case can serve to educate the parties (whether or not the same) and the trial court about the issues and how to streamline the litigation here. The WV coverage action provides a bellwether litigation model for the parties to adhere to—or depart from—as they choose; the same is true for the court in its adjudicative choices, as justice requires. A stay is warranted where it serves convenience and substantial justice for the matter to be heard in an alternate forum. (§ 410.30, subd. (a).) A stay based on the WV coverage action therefore rested within the trial court's sound discretion.

St. Paul relies on statements excerpted from *American Cemwood Corp. v. American Home Assurance Co.* (2001) 87 Cal.App.4th 431 (*American Cemwood*) to

suggest that the trial court lacked authority to enter a stay where the parties were not identical. We are not persuaded.

There, in reversing the trial court's entry of a stay pending commencement of litigation in an alternative forum, the appellate court reasoned, "The [trial] court's discretion to decline to exercise its authorized jurisdiction over an action for considerations of convenience is limited by the proviso that another forum must be available for the plaintiff's action. A rule permitting a stay or dismissal of an action over which no single alternative court could exercise jurisdiction would force the plaintiff to pursue separate actions in multiple states or countries to obtain complete relief. Such a rule, by encouraging piecemeal litigation and blossoming numbers of actions in multiple jurisdictions, would threaten precisely those considerations of convenience, economy and justice the doctrine was designed to bolster. [Citations.] It would also encourage the tactical use of forum non conveniens motions, not for valid reasons of public and private convenience, but to overburden plaintiffs with the difficulty and expense of litigating on multiple fronts. In short, we think Respondents' position comports neither with the language of our statute nor its purposes." (*American Cemwood*, *supra*, 87 Cal.App.4th at pp. 438-439.)

That court concluded "the statutory language at least suggests that a suitable alternative forum is one in which the plaintiff may sue all of the properly named defendants. Section 410.30 speaks to whether the plaintiff should be required to bring its 'action,' not its claims against some particular defendant or defendants, in '*a forum* outside this state.'" (*American Cemwood*, *supra*, 87 Cal.App.4th at p. 437, underlining added.) Invoking *American Cemwood*, St. Paul argues a stay exceeded the trial court's discretion because the ABC Entities have not sought to add St. Paul Mercury or other plaintiffs or defendants to the WV coverage action in response to the St. Paul Insurers' complaint here.

19

St. Paul's reliance on *American Cemwood* is misplaced. First, St. Paul's decision to "blossom[ the] numbers of actions in multiple jurisdictions" when adverse rulings arose in the other jurisdiction amounts to exactly "the tactical use of [the] forum non conveniens" doctrine that *American Cemwood* condemns. (*American Cemwood*, *supra*, 87 Cal.App.4th at p. 439.) That the St. Paul Insurers are plaintiffs here and not defendants as in *American Cemwood* is a distinction without a difference. The trial court's stay order incorporates considerations such as "'the importance of discouraging multiple litigation designed solely to harass an adverse party, and of avoiding unseemly conflicts with the courts of other jurisdictions,'" and "'whether the rights of the parties can best be determined by the court of the other jurisdiction because of the nature of the subject matter . . . or the stage to which the proceedings in the other court have already advanced.'" (*Thomson*, *supra*, 66 Cal.2d at pp. 746-747; *Century Indemnity*, *supra*, 58 Cal.App.4th at p. 412.) The trial court was entitled to weigh these considerations and the extent to which they are present here; they support the court's stay order.

Second, we do not read *American Cemwood* to preclude the bellwether stay entered here. The court in *American Cemwood* was not called upon to consider that possibility and therefore does not preclude it. In effect, St. Paul argues that there must be one action across all forums on which to premise a stay while awaiting final adjudication in that action with binding jurisdiction over all parties—or else no stay may be entered and litigation must proceed everywhere at the same time. A stay limited to such instances would be a stay entered by the trial court in anticipation of dismissal once the dispositive action elsewhere commences or concludes. That is inconsistent with bellwether proceedings, the realities here, and analogous MDL proceedings. *American Cemwood* articulated no such restriction, which would comport neither with the language of the forum non conveniens statute nor the doctrine's purposes.

Section 410.30, subdivision (a), is phrased in the disjunctive and authorizes dismissal *or* a stay, which indicates the stay need not be a stay entered to effectuate a

dismissal. The statutory terms and nature of the doctrine indicate the matter need not necessarily be resolved for res judicata purposes elsewhere, but may be "heard" there for purposes of convenience and substantial justice, in the trial court's discretion. (§ 410.30, subd. (a).) Indeed, implicit in a court's issuance of a stay is the reality that when the stay has served its purpose, the matter "may proceed here under the original complaint," as in *Thomson* for further proceedings as necessary, final adjudication for res judicata purposes if needed, and disposition. (*Thomson*, *supra*, 66 Cal.2d at p. 746, fn. 4.) *American Cemwood* does not say otherwise.

Consistent with the flexible purpose of the forum non conveniens doctrine and the statute's broad terms: "At any time before the expiration of a stay, the court upon motion and notice to the parties may modify the stay order and take any further action in the proceeding as the interests of justice require." (Judicial Council of Cal., com., 14A West's Ann. Code Civ. Proc. (2022 ed.) foll. § 410.30, p. 452.) The St. Paul Insurers do not suggest the trial court should have imposed any particular condition such as a more restrictive time frame or other limitation on its stay order; they argue only that it should not have issued a stay at all.

The trial court here may address "upon motion of a party or its own motion" any issue related to its stay that may arise.[12] (§ 410.30, subd. (a).) For the

_____

[12] We observe that the WV coverage action is itself bifurcated into two phases, with the first phase serving as a bellwether for the second. Specifically, the trial court there described the bifurcation as follows: "On February 22, 2018, th[is] Court entered an agreed order bifurcating the proceedings in this coverage action into two phases, and staying litigation with regard to phase two pending further rulings from this Court. [Citing its 'Stay Order.'] The Stay Order contemplates a first phase of litigation regarding ABDC's claim for insurance coverage for the West Virginia Attorney General's prescription opioid lawsuit against ABDC, in which the Court would resolve key legal issues common to all prescription opioid [coverage] lawsuits. In this way, ABDC's claim for coverage for the West Virginia Attorney General's prescription opioid lawsuit against ABDC would act as a bellwether. In the second phase of this litigation, the Court will apply its rulings from phase one to resolve coverage for all remaining

21

reasons discussed, however, there is no merit in the St. Paul Insurers' challenge to the trial court's authority to enter the stay or the propriety of the stay under the circumstances here.

## DISPOSITION

The trial court's stay order is affirmed. Respondents are entitled to their appellate costs.

GOETHALS, J.

WE CONCUR:

MOORE, ACTING P. J.

SANCHEZ, J.

---

prescription opioid lawsuits [before that Court]."

We grant appellant's and respondent's respective requests for judicial notice. (Evid. Code, § 452, 459.) The documents in these requests include, among others, scheduling orders entered by the West Virginia trial court. We note that the orders specify as to phase one of the WV coverage action that "dispositive motions" must be filed by July 8, 2022, and that trial in phase one is scheduled for October 4, 2022.

As noted in our introduction above, the trial court's stay order below specifies: "This action is ordered stayed as to plaintiffs' Complaint pending resolution of the West Virginia action." We do not suggest that the trial court's stay order is circumscribed to the "resolution" *of phase one* in the WV coverage action, and no party argues as much on appeal. That issue is committed to the trial court's sound discretion if it arises on a party's or the court's own motion. (§ 410.30, subd. (a).)