Filed 10/9/23  Default Recoveries v. Shen CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| DEFAULT RECOVERIES LLC, | B316051 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. SC129805 |
| JINRONG SHEN, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Elaine W. Mandel, Judge. Affirmed.

John L. Dodd and Associates, John L. Dodd, Benjamin Ekenes; Law Offices of Fei Pang and Bruce A. Fields for Defendant and Appellant.

Michelman & Robinson, Sanford L. Michelman, Todd H. Stitt, Reuben A. Ginsburg, Samantha Drysdale and Tabitha F. Flood for Plaintiff and Respondent.

———————————

## INTRODUCTION

In 2015, defendant and appellant Jinrong Shen signed a promissory note in favor of Sheldon Liu, a California resident, in which appellant agreed to pay Liu 30 million Chinese yuan within three months.  Liu later assigned the note to plaintiff and respondent Default Recoveries, LLP, a California corporation.  The note, which was signed in the People's Republic of China, contains a forum-selection clause stating that California courts have exclusive jurisdiction over any dispute arising from or related to the note.  When appellant failed to pay, respondent sued him for breach of the note and related causes of action.  Although respondent attempted to locate appellant first in China and then in California to serve him with process, respondent ultimately effected service on appellant by publication in California.  After the trial court denied appellant's motion to quash service and his motion to stay or dismiss for forum non conveniens, appellant defaulted, resulting in a default judgment.  On appeal, appellant challenges the court's denial of the two motions.  We affirm.

## BACKGROUND

### 1.    The Promissory Note

On June 11, 2015, appellant executed a promissory note in favor of Sheldon Liu.  Appellant agreed to pay Liu ¥30 million as compensation for appellant's "fail[ure] to ensure [Liu's] shareholder rights and investment benefits."  Under the terms of the note, full payment was due in September 2015.

The note included a choice-of-law and forum-selection clause:

> "I hereby agree that this note shall be governed by
> the laws of the State of California, U.S.A., and any

2

dispute arising from or relating to this note shall be submitted to the exclusive jurisdiction of the courts of the State of California, U.S.A."

Appellant failed to pay any amount due on the note, and Liu sold the note to respondent.

## 2.  *The Complaint*

On September 7, 2018, respondent filed a complaint against appellant, alleging causes of action for (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) fraud; (4) negligent misrepresentation; (5) unfair competition (Bus. & Prof. Code, § 17200 et seq.); and (6) declaratory relief.

## 3.  *Service of Process*

Beginning in the fall of 2018, respondent attempted to locate and serve appellant in both China and California.  Among other attempts, respondent sent a service packet through the Ministry of Justice of China, the Central Authority designated under the Hague Convention, to attorneys Yalin Zhang and Limeng Yang of R&P China Lawyers.[1]

In response, Zhang and Yang sent Chinese authorities a letter of objection to service, arguing that service on them did not comply with the Hague Convention.  As relevant here, the lawyers wrote:

> "The Plaintiff specifically describes the identity and address of the Defendant SHEN in the 6th

---

[1]  Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, T.I.A.S. No. 6638 (hereafter Hague Convention).

paragraph of the 2nd page of the Complaint, which states, 'Defendant SHEN is an individual who is believed to be a citizen and resident of Hong Kong, China (ID No. HK ***), and is also believed to reside in California.' Therefore, the Plaintiff and the Petitioner are fully aware and sure that defendant SHEN is a Hong Kong citizen residing in the State of California, USA. The Plaintiff and the Petitioner are supposed to have provided the court with the residence of the defendant SHEN in the State of California, USA or Hong Kong, and service should not have been addressed to Mainland China."

Respondent then hired an investigator to search for appellant in California, to no avail.

In November 2019, respondent sought from the trial court an order for service by publication, supported by declarations by attorney Samantha Gavin and the private investigator. The court issued the order as requested, and the Los Angeles Daily News published the notice for four consecutive weeks in December.

### 4. *Motion to Quash*

Ten days later, appellant filed a motion to quash service of summons. He argued the service was invalid because he had insufficient contacts with California to establish personal jurisdiction in the State. He also argued service by publication was improper because he was not a California resident.

In support of his motion, appellant filed his own declaration and declarations by attorneys Zhang and Yang. Appellant declared that he resided in Shanghai, China, had never lived in

4

California, never conducted business in California, was never served with the summons and complaint, and did not authorize R&P China Lawyers to accept service of process on his behalf. Zhang and Yang also declared that appellant had never authorized R&P China Lawyers to accept service of process on his behalf and that they had prepared a letter of objection to service stating that service on them did not comply with the Hague Convention.

Respondent opposed the motion, and appellant replied.

The trial court issued a tentative ruling in which it stated that appellant had consented to personal jurisdiction in California by agreeing to the forum-selection clause. Nevertheless, the court intended to grant the motion based on its view that respondent had not established that it had exercised reasonable diligence to ascertain appellant's address in China as required by the Hague Convention. The court requested supplemental briefing on the question of reasonable diligence.

Following supplemental briefing, the court denied the motion to quash, finding that respondent had complied with the Hague Convention by exercising reasonable diligence in attempting to locate appellant in China and California before resorting to service by publication.

5.      *Writ Petition on Motion to Quash*

On August 3, 2020, appellant filed a petition for writ of mandate in this court challenging the denial of his motion to quash. We denied the petition without explanation.

6.      *Inconvenient-Forum Motion*

Next, appellant filed a motion to dismiss or stay the action on grounds of inconvenient forum under Code of Civil Procedure section 418.10, supported by the declarations of appellant, Qiao

5

Peng, Jerry Jin, and Xin Ning.² Appellant argued that California is an inconvenient forum because the parties, witnesses, and evidence are all located in China; that the Covid-19 travel restrictions would make it difficult and inconvenient for parties and witnesses to travel from China to California; that the pandemic created a serious health risk for appellant and others having to travel to California; and that the State of California has no interest in this dispute.

Appellant acknowledged the forum-selection clause only briefly, arguing, "Even though the Courts generally honor the parties' right to choose the forum per agreement, a forum clause may be unreasonable if the forum is so gravely difficult and inconvenient that the party will for all practical purposes be deprived of his day in court."

Appellant declared that he is "a Hong Kong citizen, currently staying in China." He stated that he signed the note in Shanghai, China in June 2015, and, based on information and belief, the note "serves as a conditional guarantee that is related to a series of complicated business transactions with the plaintiff dated back from 2008." Appellant wrote that the transactions related to the note were the subject of "extremely complex" litigation in China involving several different cases and entities and thousands of pages of documents and court transcripts.

Respondent opposed the motion, and appellant replied.

On November 18, 2020, the court issued a written tentative ruling concluding that the forum-selection clause should not be enforced because it would be prejudicial to require appellant to

---

² All undesignated statutory references are to the Code of Civil Procedure.

6

travel to California during the Covid-19 pandemic. Thus, it intended to grant the motion on the condition that appellant stipulate not to assert the statute of limitations defense to a lawsuit in China. After a hearing, the court granted respondent's request to file a sur-reply limited to addressing new evidence and argument asserted in appellant's reply. Following that briefing, the court reversed course and denied the motion, holding that the forum-selection clause "is enforceable under U.S. and Chinese law, regardless of whether California is an inconvenient forum."

**7.    *Default and Default Judgment***

After appellant failed to file a responsive pleading, the court entered first his default and then a default judgment on the breach of contract cause of action, for a total of $7,663,915.23 in damages, prejudgment interest, and costs. Appellant filed a timely notice of appeal.

## *DISCUSSION*

Appellant challenges the trial court's order denying his motion to quash service of summons and its subsequent order denying his inconvenient-forum motion. As to jurisdiction over him, appellant contends the forum-selection clause in the promissory note designating California as the required forum did not operate as consent to personal jurisdiction in California; there is no other constitutional basis for personal jurisdiction over him; and any implied consent extended only to the contract claims. He also contends respondent violated the Hague Convention by failing to exercise reasonable diligence to locate him in China.

As for the order denying his forum non conveniens motion, appellant argues China was a proper forum for the suit, and the court failed to appreciate or properly exercise its discretion to

7

stay or dismiss the California litigation pending proceedings in China.

**1.** ***California has personal jurisdiction over appellant in this matter.***

Appellant contends the court erred by denying his motion to quash for lack of personal jurisdiction. Specifically, he asserts: (1) the court erred by concluding he had consented to personal jurisdiction in California; (2) there is no alternative basis for personal jurisdiction; and (3) any consent to jurisdiction extended only to the breach of contract claim.

Respondent argues, and we agree, that appellant at least implicitly consented to personal jurisdiction by agreeing to the mandatory forum-selection clause in the promissory note, and the consent extended to all causes of action.

**1.1.  Standard of Review**

Where there is no conflicting evidence, we review the trial court's ruling on personal jurisdiction de novo. (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 273.) If the evidence conflicts, we accept the trial court's express or implied factual findings supported by substantial evidence, draw all reasonable inferences in support of the court's order, and independently review the court's jurisdictional determination. (*Burdick v. Superior Court* (2015) 233 Cal.App.4th 8, 17.)

**1.2.  Appellant consented to personal jurisdiction by agreeing to the forum-selection clause.**

A court cannot adjudicate a personal obligation or claim unless it has jurisdiction over the person of the defendant. (*Rockefeller Technology Investments (Asia) VII v. Changzhou Sinotype Technology Co., Ltd.* (2020) 9 Cal.5th 125, 139 (*Rockefeller*).) Under California law, state courts "may exercise

personal jurisdiction over a nonresident defendant to the extent allowed under the state and federal Constitutions." (§ 410.10.) Section 410.10 " 'manifests an intent to exercise the broadest possible jurisdiction, limited only by constitutional considerations.' " (*Szynalski v. Superior Court* (2009) 172 Cal.App.4th 1, 6–7 (*Szynalski*).)

The United States Constitution, in turn, allows a state to exercise jurisdiction over a nonresident defendant if the defendant has sufficient "minimum contacts" with the forum such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " (*Internat. Shoe Co. v. Washington* (1945) 326 U.S. 310, 316.) Personal jurisdiction can also be based on a defendant's express or implied consent. (*Rockefeller*, *supra*, 9 Cal.5th at pp. 138–140.) If the defendant consents to personal jurisdiction, minimum contacts are not required. (*Ibid*.)[3]

"Agreeing to resolve a particular dispute in a specific jurisdiction . . . is one means of expressing consent to personal jurisdiction of courts in the forum state for purposes of that dispute." (*Szynalski*, *supra*, 172 Cal.App.4th at p. 7.) That is because an agreement to resolve a dispute in a particular forum necessarily implies consent to personal jurisdiction in that forum. (*Ibid*.; see also *Rockefeller, supra,* 9 Cal.5th at p. 140.)

For example, in *Rockefeller*, our Supreme Court held that by agreeing to arbitrate in California, the parties had impliedly consented to personal jurisdiction in California courts to enforce

[3]     Because we conclude appellant consented to personal jurisdiction, we need not reach his alternative contention that he lacks sufficient minimum contacts with California.

the arbitration agreement and enter judgment on an arbitration award. (*Rockefeller*, *supra*, 9 Cal.5th at pp. 143–144.) Those implied agreements were necessary to effectuate the express agreement. (*Id*. at p. 142.) In the same way, a forum-selection clause constitutes consent to personal jurisdiction in the selected forum. (*Id*. at p. 140.)

Appellant argues *Rockefeller* did not consider the limits of a party's contractual consent to personal jurisdiction. Relying on *Global Packaging, Inc. v. Superior Court* (2011) 196 Cal.App.4th 1623 (*Global Packaging*), he contends that "the mere signing of a forum-selection clause does not itself amount to a consent to personal jurisdiction; to comport with the Due Process Clause, agreement to submit to personal jurisdiction must be express and unambiguous." We do not read *Global Packaging* so broadly, and remain guided, as we must, by the principles laid out in our Supreme Court in *Rockefeller*.

*Global Packaging* held that a venue-selection clause did not imply agreement to submit to personal jurisdiction in the selected venue. (*Global Packaging*, *supra*, 196 Cal.App.4th at p. 1632.) The court explained that because the parties in that case could have expressly consented to personal jurisdiction—yet did not— the courts should not supply the missing term. (*Id*. at p. 1634.)

We find *Global Packaging* inapt for a fundamental reason—it does not involve a forum-selection clause of the type presented here. Global Packaging was a Pennsylvania company that produced packaging for consumer products. It licensed software from Epicor Software Corporation, a Delaware corporation with its principal place of business in Orange County. When a dispute arose between the companies, Epicor sued Global Packaging in Orange County. (*Global Packaging*, *supra*, 196

10

Cal.App.4th at p. 1627.)  The question on appeal was whether a clause in the license that referred only to venue constituted a forum-selection clause under which Global Packaging impliedly consented to submit to personal jurisdiction in California courts. (*Id*. at pp. 1627–1628.)

Our colleagues in the Fourth District found a venue-selection clause could not be transformed into consent to personal jurisdiction in California:  "The trial court took a clause referring to 'venue,' translated 'venue' into 'forum,' and then extended 'forum' to include personal jurisdiction.  This stretches [the parties' agreement] beyond what its actual words can bear and pulls Epicor out of a pit of its own digging.  Global Packaging cannot be haled into a California court on that basis."  (*Global Packaging*, *supra,* 196 Cal.App.4th at p. 1635.)

As the *Global Packaging*  court recognized, the clause was nearly incomprehensible.[4]  It provided in pertinent part:  " 'Any controversy or claims arising out of or relat [ ] to this Agreement shall be venued only in the state or federal court in and [ ] (a) Orange County, California or (b) the jurisdiction in which the Software is located; without regard to their conflict of laws and principle [sic]. Such venue shall be determined by the choice of the plaintiff bringing the action."  (*Id*. at p. 1627, brackets original.)

The Court of Appeal found the trial court had created jurisdiction out of venue; yet, the latter was a geographical designation determined largely by statute and the former

_____

[4]      "A court should not be called upon to function as a backstop for sloppy contract drafting."  (*Global Packaging, supra,* 196 Cal.App.4th at p. 1634.)

11

founded in the authority of the State and limited by the Due Process Clause. The case before us does not require such a stretch. The clause at issue is the second paragraph of a two-paragraph agreement in which appellant promised to pay Liu ¥30 million within three months. It is unambiguous: "I hereby agree that this note shall be governed by the laws of the State of California, U.S.A., and any dispute arising from or relating to this note shall be submitted to the exclusive jurisdiction of the courts in the State of California, U.S.A." As the clause mandates, "the exclusive jurisdiction of the courts [is] in the State of California." Appellant cannot declare that jurisdiction over this note shall be in a California court while at the same time assert that California has no personal jurisdiction over him.

In short, when presented with a word salad of a clause buried in an end-user license agreement, the court in *Global Packaging* declined to hold the defendant had consented to personal jurisdiction in California courts. At most, the court held that choice-of-venue clauses do not automatically confer personal jurisdiction. We agree but conclude, for the reasons stated, the promissory note here did convey personal jurisdiction over appellant.[5]

We find the other case on which appellant relies, *Hunt v. Superior Court* (2000) 81 Cal.App.4th 901, also distinguishable but for a different reason. There, a guaranty of a lease contained

---

[5]     To the extent *Global Packaging* can be read to require the granting of the forum non conveniens motion, we respectfully decline to follow the opinion. (See *Sarti v. Salt Creek Ltd.* (2008) 167 Cal.App.4th 1187, 1193–1194 ["there is no horizontal stare decisis in the California Court of Appeal," and one panel of the court is not bound another court of appeal's opinion].)

a forum selection clause designated as the "applicable jurisdiction." (*Id.* at p. 907.) The guaranty did not define "applicable jurisdiction," so the court of appeal turned to the underlying lease, the relevant provision of which is set out in the margin.[6] That clause, in turn, addressed choice of law, not forum selection, and did not constitute plaintiff's consent to jurisdiction in California. (*Id.* at p. 909.)

### 1.3. Personal jurisdiction extended to all causes of action.

Appellant next contends that even if he consented to personal jurisdiction by agreeing to the forum-selection clause, his consent was limited to an action to enforce the promissory note. We disagree, but it really doesn't matter.

In *Nedlloyd Lines B.V. v. Superior Court* (1992) 3 Cal.4th 459 (*Nedlloyd Lines*), the Supreme Court considered the effect of a choice-of-law clause in a contract between commercial entities to finance and operate an international shipping business. The Supreme Court was asked to determine whether the clause, which stated the contract would be " 'governed by' " the law of

---

[6] "18. GOVERNING LAW. As used in this paragraph 18, 'Applicable Jurisdiction' means the state, as the same may change from time to time, where the holder of the Lessor's interest in this Lease maintains its principal office responsible for administering this Lease. This Lease and any guaranty hereof shall be interpreted and construed in accordance with, and governed by, the laws of the Applicable Jurisdiction applicable to lease and guaranty agreements respectively, made and to be fully performed in the Applicable Jurisdiction."

Hong Kong, applied to the plaintiff's claim for breach of fiduciary duty. (*Id*. at p. 462.) The plaintiff contended its fiduciary duty claim was independent of the contract and, therefore, outside the intended scope of the provision, entitling plaintiff to the application of California law on that claim. (*Id*. at p. 468.)

The Supreme Court disagreed: "When two sophisticated, commercial entities agree to a choice-of-law clause like the one in this case, the most reasonable interpretation of their actions is that they intended for the clause to apply to all causes of action arising from or related to their contract." (*Nedlloyd Lines*, *supra*, 3 Cal.4th at p. 468.) The contract between the parties said it was to be "governed by" Hong Kong law; it did not provide for any exceptions. (*Id*. at pp. 468–469.) The Court concluded that language meant Hong Kong law applied not only to claims involving contract interpretation but also to any cause of action based on the relationship created by the contract. (*Id*. at p. 469.)

"We seriously doubt that any rational businessperson, attempting to provide by contract for an efficient and business-like resolution of possible future disputes, would intend that the laws of multiple jurisdictions would apply to a single controversy having its origin in a single, contract-based relationship." (*Nedlloyd Lines*, *supra*, 3 Cal.4th at p. 469.) The Court held, "a valid choice-of-law clause, which provides that a specified body of law 'governs' the 'agreement' between the parties, encompasses all causes of action *arising from or relating to* that agreement, regardless of how they are characterized, including tortious breaches of duties emanating from the agreement or the legal relationships it creates." (*Ibid*., italics added.)

The contract here precisely tracked the *Nedlloyd Lines* language. It provided: "this note shall be *governed by* the laws of

14

the State of California, U.S.A., and any dispute *arising from or relating to* this note shall be submitted to the exclusive jurisdiction of the courts in the State of California, U.S.A." (Italics added.)  We see no reason to treat the expansive language in this choice-of-forum clause differently than the similarly-expansive choice-of-law provision in *Nedlloyd Lines*.  (See *Cal-State Business Products & Services, Inc. v. Ricoh* (1993) 12 Cal.App.4th 1666, 1676–1677 (*Cal-State*) [applying *Nedlloyd Lines* to forum-selection clause that stated:  "any case or controversy arising under or in connection with the Agreement" shall be heard in a New York court].)

This California Supreme Court authority aside, appellant cites *Bancomer S.A. v. Superior Court* (1996) 44 Cal.App.4th 1450 (*Bancomer*) for the proposition that a forum-selection clause can apply to tort claims only if resolution of those claims requires interpretation of the contract.  The forum-selection clause in *Bancomer* stated:  " 'Any conflict which may arise regarding the interpretation or fulfillment of this contract, shall be submitted expressly to the courts of the City of Ensenada, B.C.' "  (*Id.* at p. 1453, italics omitted.)  The Court of Appeal explained that in general, " 'forum selection clauses can be equally applicable to contractual and tort causes of action.  [Citations.]  Whether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract.  [Citations.]' "  (*Id.* at p. 1461.)  Under the language of the contract, the forum-selection clause did not encompass tort claims for fraudulent inducement because those claims "[did] not relate to 'any conflicts' 'regarding the interpretation or fulfillment' of the agreement."  (*Id.* at p. 1462.)

15

*Bancomer* is easily distinguishable.  The contract there expressly limited the forum selection clause to those claims "regarding the interpretation or fulfillment of this contract."  No such limitation appears in the note here.  To the contrary, the note broadly states, "any dispute arising from or relating to this note shall be submitted to the exclusive jurisdiction of the courts in the State of California, U.S.A."  Each cause of action in the complaint (with the possible exception of the declaratory relief claim) expressly relates to the note.

In any event, the record does not disclose that the trial court judgment entered here covered every cause of action or that even if it did include non-contractual claims, the result would be any different.  Neither the judgment nor the notice of entry delineates the various causes of action.  Nor does appellant even argue that the total judgment includes amounts attributable solely to tort claims.  Thus, any error of this sort is harmless.

**2.    *Service was proper.***

Appellant contends respondent violated the Hague Convention by failing to exercise reasonable diligence to locate him in China.  As such, the subsequent service by publication was invalid, and the trial court should have granted his motion to quash.  We conclude that once appellant's lawyers in China represented that appellant was living in California, respondent was not required to undertake further efforts to locate him abroad.  Taken as a whole, the evidence was sufficient to support the trial court's finding that respondent was reasonably diligent in attempting to locate appellant.  Accordingly, the Hague Convention did not apply, and service by publication was proper.

### 2.1. Legal Principles

The Hague Convention is a multilateral treaty that governs procedures for service of process to defendants living in foreign jurisdictions. (*Rockefeller*, *supra*, 9 Cal.5th at p. 135.) The United States was an original signatory to the Convention, and China adopted it in 1992. (*Ibid.*)

The Convention applies " 'in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad.' " (*Rockefeller*, *supra*, 9 Cal.5th at p. 135.) The Convention states it " 'shall not apply where the address of the person to be served with the document is not known.' " (*Kott v. Superior Court* (1996) 45 Cal.App.4th 1126, 1133 (*Kott*).) That is, "the Convention does not apply to situations in which the whereabouts of the defendant cannot be ascertained despite reasonable diligence." (*People v. Parcel No. 056–500–09* (1997) 58 Cal.App.4th 120, 124–125.)

Even when the Hague Convention does not apply, state law may nonetheless require transmittal abroad as a necessary part of service. (*Rockefeller*, *supra*, 9 Cal.5th at p. 145.) In California, section 413.10 governs service of summons, and the statute explicitly requires plaintiffs to serve any defendant outside the United States in accordance with the Hague Convention.[7] Thus,

---

[7] "Except as otherwise provided by statute, a summons shall be served on a person: . . . Outside the United States, as provided in this chapter or as directed by the court in which the action is pending, or, if the court before or after service finds that the service is reasonably calculated to give actual notice, as prescribed by the law of the place where the person is served or as directed by the foreign authority in response to a letter rogatory. *These rules are subject to the provisions of the*

17

when the Convention applies to a California proceeding, failure " 'to comply with the Hague Service Convention procedures voids the service even though it was [otherwise] made in compliance with California law. [Citation.] This is true even in cases where the defendant had actual notice of the lawsuit.' " (*Rockefeller*, at p 138.)

The "only method of service under California law which does not require the transmission of documents abroad, and consequently does not implicate the Hague Service Convention, is service of summons by publication where the party's address remains unknown during the publication period despite the exercise of reasonable diligence." (*Kott*, *supra*, 45 Cal.App.4th at p. 1136.) Section 415.50, subdivision (a), authorizes service by publication when, despite reasonable diligence, the defendant cannot be located and served another way.[8] Reasonable diligence is the same for purposes of both the Hague Convention and service by publication. (*Knott*, at pp. 1136–1137.)

Reasonable diligence " 'denotes a thorough, systematic investigation and inquiry conducted in good faith by the party or his agent or attorney. [Citations.] A number of honest attempts to learn defendant's whereabouts or his address . . . are generally

---

*Convention on the 'Service Abroad of Judicial and Extrajudicial Documents' in Civil or Commercial Matters (Hague Service Convention).*" (§ 413.10, subd. (c), italics added.)

[8]     "A summons may be served by publication if upon affidavit it appears to the satisfaction of the court in which the action is pending that the party to be served cannot with reasonable diligence be served in another manner specified in this article . . . ." (§ 415.50, subd. (a).)

18

sufficient. . . .  However, the showing of diligence in a given case must rest on its own facts and '[n]o single formula nor mode of search can be said to constitute due diligence in every case.' " (*Kott*, *supra*, 45 Cal.App4th at pp. 1137–1138.)  "The question is whether the plaintiff took the steps a reasonable person who truly desired to give notice of the action would have taken under the circumstances." (*Rios v. Singh* (2021) 65 Cal.App.5th 871, 880.)

Where, as here, "an issue is resolved by way of declarations or affidavits, ' "the rule on appeal is that those affidavits favoring the contention of the prevailing party establish not only the facts stated therein but also all facts which reasonably may be inferred therefrom, and where there is a substantial conflict in the facts stated, a determination of the controverted facts by the trial court will not be disturbed." [Citation.]  But we "independently review [the trial court's] statutory interpretations and legal conclusions [citations]." ' " (*Lebel v. Mai* (2012) 210 Cal.App.4th 1154, 1159.) "We review a trial court's finding that the defendant could not with reasonable diligence be served by a means superior to publication for substantial evidence." (*Rios v. Singh*, *supra*, 65 Cal.App.5th at pp. 880–881.)

### 2.2.   Efforts to Serve Appellant

The trial court concluded that respondent's efforts to locate appellant in China, his lawyers' representations that appellant was in California, and respondent's efforts to locate him in this State together constituted reasonable diligence.  Substantial evidence supports that conclusion.

**Service at Howard Johnson's Hotel in Shanghai**.

Shanghai attorney Peiming Yang declared that in China, an individual's address and telephone number are treated as

19

confidential information, and there was no legal basis for a formal search of registered data for real estate in this case. The court found Yang's declaration credible.

With no basis for a records search, respondent started with the best lead it had: information that appellant had been living at the Howard Johnson Hotel in Shanghai. Appellant was the registered legal representative of Shanghai Ping'an Xinlun Property Development Co., Ltd., which owned the commercial development at 1 Fenyang Road in Shanghai, where the Howard Johnson Hotel was located. Appellant told Sheldon Liu (the beneficiary of the note) and Sheldon's wife that when in China, he lived and worked at the Howard Johnson Hotel located at 1 Fenyang Road in Shanghai. Starting in 2008 or 2009, the Lius visited appellant at the hotel many times; they noted he appeared to be living and working there. They also sent documents to and received documents from appellant at the same hotel address. Finally, in 2015, appellant signed the ¥30 million promissory note at the hotel.

Based on this information, respondent attempted to serve appellant at the Howard Johnson Hotel under the Hague Convention. Counsel mailed service packets to the Ministry of Justice of China in September 2018 and again in March 2019, requesting service on appellant at the hotel.

Appellant later submitted a declaration in support of his motion to quash that stated: "Howard Johnson Hotel located at l Fenyang Rd, Huai Hai Lu Xi Duan, Xuhui District, Shanghai, China, 200031 was never my registered residence or permanent residence in Shanghai, China. On occasion, I did conduct business meetings at the Hotel only relative to business entities that I have been involved with and have stayed there as a guest

at times when doing so [ ].  I never maintained any office or residence at the Hotel and never authorized the Hotel to accept service of legal process documents.”

**Service on Counsel in China**.  In November 2018 and March 2019, respondent's counsel also mailed service packets to the Ministry of Justice of China requesting service on appellant's attorneys in China, Yalin Zhang and Limeng Yang.  Service on the attorneys was completed on June 17, 2019.  Respondent's counsel subsequently received a certificate of service to that effect.

**Objection Letter**.  On July 8, 2019,  Zhang and Lang, appellant's lawyers in China, sent a letter to Chinese authorities objecting to service.  The lawyers stated that they were not authorized to accept service of process on appellant's behalf.  They also asserted that appellant had been served at the wrong address:

> "The Complaint shows that the Defendant of the Case No. SCl29805 is Jinrong SHEN.  The Plaintiff specifically describes the identity and address of the Defendant SHEN in the 6th paragraph of the 2nd page of the Complaint, which states 'Defendant SHEN is an individual who is believed to be a citizen and resident of Hong Kong, China (ID No. HK P667203191), and is also believed to reside in California.'  Therefore, the Plaintiff and the Petitioner are fully aware and sure that the Defendant SHEN is a Hong Kong citizen residing in the State of California, USA.  The Plaintiff and the Petitioner are supposed to have provided the court with the residence of the Defendant SHEN in the

21

State of California, USA or Hong Kong, and service should not have been addressed to Mainland China."

Several pages later, the letter made a similar, more explicit claim about appellant's whereabouts: "As mentioned above, the Plaintiff and the Petitioner are fully aware that the Defendant SHEN is a Hong Kong citizen residing in the State of California, U.S.A, rather than Mainland China."

**Efforts to Locate Appellant in California**. "Based on the objection served by Shen's attorneys," counsel for respondent "immediately started searching for him in California." The court found counsel's claims credible.

Counsel hired a private investigator to conduct the California search. The investigator searched comprehensive database records for appellant, the Shen Family Living Trust, Jia Liu (believed to be appellant's partner and the mother of his three young children), and Wen Fei Shen (appellant's adult daughter). The investigator found no property associated with appellant but did find property associated with the trust, Jia Liu, and Wen Fei Shen.

The investigator conducted all-day stakeouts of the five identified properties, which were located in Arcadia and Irvine. Although he did not see appellant or Jia Liu at those locations, the investigator observed someone he believed to be Wen Fei Shen leaving a residence in Arcadia. He tried and failed to speak with her. Then, he contacted neighbors to confirm her identity, but the neighbors did not know the resident.

Next, the investigator found a phone number associated with Jia Liu, called the number, and left a message; Liu did not return the call.

22

The investigator asked the United States Postal Service to determine whether appellant received mail at any of the five target properties. USPS responded that appellant received mail at 20 E. Foothill Boulevard, #108 in Arcadia, California.

That address turned out to be a commercial building where four companies conducted business: Irvine Home Property, LLC; Mingzhu Development Corporation; Mingzhu Investment, LLC; and Zhanshou, LLC. All four companies were associated with appellant's adult daughter, Wen Fei Shen, who was listed as the manager of each one; Zhanshou, LLC was also associated with appellant's partner, Jia Liu, who had formerly been listed as its agent for service of process. The investigator surveilled the building for two days in July 2019, but found no one at the suite. Neighbors informed him that traffic in and out of the suite was "very light."

In October 2019, counsel tried to serve appellant at the Arcadia property located on Foothill Boulevard, but the process server reported the business had moved without leaving a forwarding address or updating its information on the California Secretary of State website. Counsel nevertheless sent appellant a copy of the summons and complaint at the same location, but the envelope was returned as undeliverable.

Counsel ultimately filed an application for service by publication in November 2019.

### 2.3. Substantial evidence supports the court's conclusion that respondent exercised reasonable diligence.

The court below concluded that respondent had acted with reasonable diligence. Respondent had provided "sufficient evidence that it exercised reasonable diligence by attempting to

serve Shen at the hotel and contacting Shen's attorneys regarding service. Plaintiff made substantial efforts to serve Shen in China before resorting to service by publication. The court finds plaintiff complied with the requirements of the Hague Service Convention, and service by publication was valid."

We conclude substantial evidence supports the court's conclusion. To be sure, appellant points to additional efforts counsel could have made to locate him in China. In particular, he argues counsel should have: attempted to verify that he still lived at the Howard Johnson Hotel by contacting the friends he shared with Sheldon Liu, the note's beneficiary; asked his Chinese lawyers for his current address; and sought address information from the WeChat app. Certainly, respondent's counsel could have done more to determine whether appellant lived at the hotel. But the possibility that undertaking further inquiry would have proved successful does not mean as a matter of law that the efforts actually made were not reasonably diligent.

Once appellant's lawyers represented that appellant lived in California, the trial court reasonably found respondent was not required to keep trying to find him in China. And although appellant has argued that his attorneys' letter merely repeated the allegations of the complaint, the trial court was not required to credit that interpretation. The court held that respondent "made multiple attempts to determine Shen's address from his attorneys, who stated attempting service in China would be futile because Shen resided in California." Based on the record before us, these are reasonable inferences, and we will not disturb them on appeal.

24

Likewise, the court credited respondent's evidence that the address information in China is confidential. By contrast, it was not persuaded that "a Shanghai resident's address can be obtained through 'the use of WeChat App on cell phones by adding the official account of Shanghai Public Safety and Population Management and registering as an attorney.' . . . Finding an address via a chat app does not appear to the court to be a reliable method of finding a party's address."

Appellant presented little evidence about the reliability of WeChat. At the hearing on the motion, for example, appellant's attorney argued:

> "They now know that there is a custom and practice as of January 2019 for attorneys to use the WeChat app to locate residences. They used an attorney in Shanghai to assist them. Anyone that is aware of this procedure would have known that that was an avenue for them to explore. They have evidence that they have submitted that one of their witnesses communicated with Mr. Shen on WeChat. So they knew that he utilized WeChat as a means of communication, which would have a record of—or I assume to sign up for WeChat, you have to provide a residence address. I mean, I don't know, but it would seem that that is the custom and practice in China."

On appeal, appellant insists substantial evidence does not support the court's WeChat skepticism because "WeChat is not some obscure app; one article reported WeChat is one of the main ways people communicate in China, and, even when doing business, people prefer WeChat to email." In support of that

claim, he cites to a CNBC article from 2019.[9] Appellant's argument notwithstanding, we are not prepared to hold that a WeChat address search is a prerequisite for service by publication in California. The trial court found respondent acted with reasonable diligence without it, and, under our standard of review, there is no reason for us overturn that finding.

Nor was the evidence appellant submitted to the trial court any more compelling. Appellant's attorney could not describe how the asserted address-search function worked, appearing to speculate when she suggested: "I assume to sign up for WeChat, you have to provide a residence address" and "I mean, I don't know, but it would seem that that is the custom and practice in China."

The court noted in response: "Despite the statements that the custom and practice from January of '19 is that the attorneys use WeChat, the court does not find that that is a necessarily sanctioned way of locating people."

Taken as a whole, substantial evidence supports the court's conclusion that respondent made reasonably diligent efforts to find appellant in China, appellant's lawyers in China represented appellant was living in California, and respondent was reasonably diligent in attempting to locate him here. Accordingly, service was proper.

3. ***The court properly denied appellant's inconvenient-forum motion.***

Appellant argues the court erred by denying his motion to dismiss or stay the action based on inconvenient forum. First, he

---

[9] As the article is neither part of the record on appeal nor a proper subject of judicial notice, we do not address it.

contends the court misapplied Chinese law when it concluded China was not a suitable alternative forum for this dispute. Then, he argues the court did not understand that it had discretion not to enforce the promissory note's mandatory forum-selection clause. We conclude the court properly understood and exercised its discretion and reasonably chose to enforce the provision. Accordingly, we need not—and do not—opine on either the Chinese rules of civil procedure or whether China constituted a suitable alternative forum.

### 3.1. Legal Principles

Forum non conveniens is an equitable doctrine, codified in section 410.30, that grants trial courts discretion to stay or dismiss any action that may be more appropriately and justly tried elsewhere. (*Stangvik v. Shiley Inc.* (1991) 54 Cal.3d 744, 751 (*Stangvik*); § 410.30, subd. (a) [court must determine whether "in the interest of substantial justice an action should be heard in a forum outside this state"].) The scope of the court's discretion depends on the type of case before it.

When assessing an inconvenient-forum motion in "a contract dispute in which the . . . agreement contains a forum selection clause, a threshold issue . . . is whether the forum selection clause is mandatory or permissive." (*Animal Film, LLC v. D.E.J. Productions, Inc.* (2011) 193 Cal.App.4th 466, 471.) A mandatory forum-selection clause requires parties to litigate in the forum designated in the contract; under a permissive forum-selection clause, the parties need only submit to jurisdiction in the designated forum. (*Berg v. MTC Electronics Technologies* (1998) 61 Cal.App.4th 349, 357–359 (*Berg*).) Here, the parties agree that the promissory note contained a mandatory forum-

27

selection clause under which appellant agreed to litigate disputes in California.

Whether a forum-selection clause is mandatory or discretionary matters because California law favors enforcement of mandatory forum-selection clauses.  (*Quanta Computer Inc. v. Japan Communications Inc.* (2018) 21 Cal.App.5th 438, 444 (*Quanta*).)  Since, without such a clause, "neither party possesses a right to any particular forum," a court's "selection of one [forum] over the other requires the weighing of a gamut of factors of public and private convenience, not to mention the strong interest of a plaintiff's domicile in providing the plaintiff access to its courts." (*Cal-State Business Products & Services, Inc. v. Ricoh* (1993) 12 Cal.App.4th 1666, 1683 (*Cal-State*); see *Berg*, *supra*, 61 Cal.App.4th at p. 359 [where "a clause merely provides for submission to jurisdiction, and does not expressly mandate litigation exclusively in a particular forum, the normal forum non conveniens analysis applies"].)

A mandatory forum-selection clause, by contrast, obviates these concerns and does not require consideration of all the typical non conveniens forum factors.[10]  (*Quanta*, *supra*, 21 Cal.App.5th at pp. 444–445.)  We may infer that "a party

---

[10]    The typical forum non conveniens analysis involves a 25-factor test balancing the private interests of the litigants and the public interests of the forum state.  (*Great Northern Ry. Co. v. Superior Court* (1970) 12 Cal.App.3d 105, 113–115.)  The most important factors are whether the plaintiff is a resident of the forum state and the availability of a suitable alternative forum.  (*Cal-State*, *supra*, 12 Cal.App.4th at p. 1675.)

which has contracted away its right to choose its home forum (as well as all the concomitant conveniences of a home forum) has presumably done so because the value it receives from the negotiated deal is worth the chance the party may be required to litigate disputes elsewhere.  To apply the general factors in this context would in essence be rewriting the bargain struck between the parties, which might not have been consummated in the absence of the forum-selection clause." (*Cal-State, supra,* 12 Cal.App.4th at p. 1683.)[11]

To be sure, a court may decline to enforce even a mandatory forum-selection clause if it concludes the chosen forum is unfair or unreasonable under the circumstances of the case. (*Quanta, supra,* 21 Cal.App.5th at p. 445.)  Typically, however, a " 'court will . . . honor a mandatory forum selection clause without extensive analysis of factors relating to convenience.  [Citation.]' " (*Ibid.*)

---

[11]     Although appellant insists that courts must weigh the gamut of public and private concerns even in the face of a mandatory forum-selection clause, the case he cites in support of that proposition involved a permissive forum-selection clause, not a mandatory one.  (*Appalachian Ins. Co. v. Superior Court* (1984) 162 Cal.App.3d 427, 431 [defendant agreed to "submit to the jurisdiction of any court of competent jurisdiction within the United States"], 439 ["the Service of Suit clause involved here . . . did not specify a particular forum], 439–440 & fn. 5 [distinguishing cases involving mandatory forum-selection clauses because policy concerns in such cases "are not inherent in the type of forum selection clause involved here"]; see also *Berg, supra,* 61 Cal.App.4th at p. 359 [concluding forum-selection clause in *Appalachian Ins. Co.* was permissive].)

We review the court's decision to deny appellant's inconvenient-forum motion and enforce the mandatory forum-selection clause for abuse of discretion. (*Quanta*, *supra*, 21 Cal.App.5th at pp. 446–447.) "The granting or denial of such a motion is within the trial court's discretion only and substantial deference is accorded its determination in this regard." (*Stangvik*, *supra*, 54 Cal.3d at p. 751.) A court may abuse its discretion by failing to exercise the discretion required by law. (*Austin v. Valverde* (2012) 211 Cal.App.4th 546, 550 [failure to exercise discretion is itself an abuse of discretion].)

### 3.2. Proceedings Below

After reviewing appellant's inconvenient-forum motion and the subsequent briefing, the court below issued a *tentative* ruling in which it concluded:

> "The court finds the note's forum selection clause should not be enforced here. Given Mr. Shen's advanced age, requiring him to travel to California during the COVID-19 pandemic would be prejudicial. Plaintiff has not identified a substantial public interest that would be served by requiring this matter to be heard in California to offset this private interest, as well as the fact that all other witnesses and evidence are in China. Per *Stangyik*, however, the court will require defendant to stipulate he will not raise the statute of limitations defense in the Chinese action. GRANTED, with the court staying this action pending commencement of the action in China and defendant's stipulation that he will not raise the statute of limitations as a defense there."

The court then granted respondent's request to file additional briefing and heard argument at a subsequent 20-minute remote hearing. At the hearing, appellant's attorney stressed "there are a lot of factors that the court did not bring out in the tentative last time, which I think are material to the court's decision today." She went on to discuss those factors at length.

Respondent's attorney, in turn, emphasized "that when parties have contracted in advance to litigat[e] disputes in a particular forum, courts should not unnecessarily disrupt the parties' settled expectation." When counsel quoted the promissory note—"any dispute arising from or relating to this note shall be submitted to the exclusive jurisdiction of the courts in the State of California"—the court interjected: "That's pretty clear, isn't it, counsel?"

Appellant's attorney responded: "this note was originally signed in 2015, okay? . . . So here it is, 2021. The parties when signing the note could not have anticipate[d] this pandemic that has virtually brought a standstill to the State of California and elsewhere." After additional arguments from both sides about the extent to which the court could consider inconvenience, appellant's attorney urged: "Under the circumstances, Mr. Shen will suffer irrevocable, irrefutable prejudice and harm if forced to proceed with the litigation right now." The court then took the matter under submission, assuring the parties that it would look again at the evidence and the briefing.

After considering the matter further, the court issued a written final order, which states:

> "Plaintiff's sur-reply provides Chinese authority that
> a forum selection clause in a contract mandates

litigation in the selected forum. [Citation.] Plaintiff cites *Resoc Int'l. Trading Limited v. China Civil Engineering Construction Corporation* Beijing High Court, 2019, BJ-Civil-Final No.62, June 28, 2020, wherein the Beijing High Court held where the parties have 'agreed to choose the jurisdiction of the dispute[,]' the agreement is enforceable even if a more convenient forum exists.

"Additionally, in *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western District of Texas* (2013) 571 U.S. 49, the Supreme Court determined '[w]hen parties agree to a forum selection clause, they waive the right to challenge the preselected forum as inconvenient[.]'

"Neither party disputes there is a forum selection clause identifying California as the chosen forum. The clause is enforceable under U.S. and Chinese law, regardless of whether California is an inconvenient forum. MOTION DENIED." (Brackets original.)

### 3.3. The court exercised and did not abuse its discretion.

Appellant infers from the changes to the tentative ruling that the court denied his motion because it misunderstood the law and failed to exercise its discretion. We disagree.

First, any legal error occurred in the tentative ruling, not the final order. "On a motion for forum non conveniens, the defendant, as the moving party, bears the burden of proof." (*Stangvik*, *supra*, 54 Cal.3d at p. 751.) In its tentative, the court identified the following governing standard: "In determining

32

whether to grant a motion under § 410.30, a court weighs the private interest of the litigants against the public interest in retaining the action in California. [Citation.] Private interests to be considered include ease of access to evidence, enforceability of the judgment, cost of obtaining witnesses and the residence of the parties/witnesses."

But that was the wrong standard. As we have explained, the public/private balancing test only applies when the dispute is not governed by a mandatory forum-selection clause. It does not apply in cases like this one, in which the parties have agreed in advance that disputes *must* be heard in California. (*Quanta, supra*, 21 Cal.App.5th at pp. 444–445.) Under those circumstances, the defendant faces a higher hurdle: He must establish that the previously-chosen forum is unfair or unreasonable under the circumstances of the case. (*Ibid*.) In the tentative ruling, the court did not note that distinction. As such, it held appellant to a lower burden of proof than it should have.

In its final order, by contrast, the court appears to have applied the correct standard, noting that the forum-selection clause was enforceable under California law, and appellant had waived his right to challenge the preselected forum as inconvenient. The differences between the tentative and final rulings, therefore, are not evidence the court misunderstood its discretion. They demonstrate only that when the court applied the correct standard of review, the court also changed its conclusion. Although defendant may have satisfied the lesser (incorrect) burden of proof, he did not meet the higher (correct) one.

Second, the reporter's transcript of the hearing on this motion indicates that the court engaged carefully with appellant's

concerns and understood its discretion.  Yet appellant mentions the hearing only in passing.  For example, in support of his contention that the court misunderstood the scope of its discretionary authority, appellant emphasizes the court's statement that the forum-selection clause "is enforceable under U.S. and Chinese law, regardless of whether California is an inconvenient forum."  Appellant acknowledges this was a correct statement of the law—at least insofar as "mere inconvenience and additional expense" do not render a bargained-for forum unfair or unreasonable—but argues the court did not consider the unforeseeability of his pandemic-related challenges.  Appellant made this very argument to the trial court.  The court understood his position; it just didn't agree with him.

In any event, the pandemic was but one factor for the court to consider when exercising its discretion.  Our courts accord great weight to California plaintiffs' choice of California as a forum.  (*Stangvik*, *supra*, 54 Cal.3d at pp. 754–755.)  Here, both the note's beneficiary (Liu) and his assignee (respondent) are in California.  Appellant expressly agreed to litigate the dispute in California courts.  It is not self-evident that the pandemic was so uniquely challenging for appellant that California residents should be denied access to California courts and forced to litigate abroad.

Finally, the parties argue at length about whether China would be a suitable alternate forum for their dispute.  The question is academic.  Although the availability of an alternate forum is necessary to establish forum non conveniens, it does not end the analysis.  That is, even if a case could be tried in different forum, it does not follow that it must be tried there.  (See *Stangvik*, *supra*, 54 Cal.3d at p. 752, fn.3 [suitability of

34

alternative forum depends on whether action may be "commenced in the alternative jurisdiction and a valid judgment obtained there against the defendant"].)  The question before us is whether the court abused its discretion by opting to enforce the parties' agreement to try the case in California.  To the extent the court misinterpreted Chinese law as requiring rather than allowing enforcement of forum-selection clauses—a question we do not reach—it was not dispositive.

### *DISPOSITION*

The judgment is affirmed.  Default Recoveries shall recover its costs on appeal.


RUBIN, P. J.

I CONCUR:


MOOR, J.

Default Recoveries LLC v. Jinrong Shen
B316051


BAKER, J., Concurring



Although I do not subscribe to the opinion for the court's analysis in all its particulars, I agree the opinion reaches the correct result.  The majority's opinion correctly holds defendant and appellant consented to personal jurisdiction in California (*Rockefeller Technology Investments (Asia) VII v. Changzhou SinoType Technology Co., Ltd.* (2020) 9 Cal.5th 125, 140); language in an earlier-decided Court of Appeal case that points to a contrary conclusion (*Global Packaging, Inc. v. Superior Court* (2011) 196 Cal.App.4th 1623, 1632) is unpersuasive and should not be followed.  Service of the summons and complaint was proper under the circumstances.  And denial of defendant and appellant's forum non conveniens motion was not an abuse of discretion.  (*Stangvik v. Shiley Inc.* (1991) 54 Cal.3d 744, 751.)



BAKER, J.